TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00432-CV






David Ronald Macias, Appellant



v.



Carole Keeton Rylander in her Official Capacity as Comptroller of Public Accounts of the
State of Texas
, Appellee





FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT


NO. 96-07543, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING 




 

 

 Appellant David Ronald Macias appeals (1) the district court's order granting partial
summary judgment in favor of Carole Keeton Rylander, Comptroller of Public Accounts of the
State of Texas (the "Comptroller"), finding that good cause exists to suspend Macias's customs
broker's license and denying Macias's request for declaratory relief, and (2) the final judgment
signed by the court rendering judgment and suspending Macias's license for ninety days. We will
affirm the judgment of the district court.


BACKGROUND


 Pursuant to the United States Constitution and the Texas Tax Code, tangible
personal property otherwise subject to sales tax imposed by the State is exempted from that tax
if the property is exported outside of the United States. See U.S. Const. art. I, § 10, cl. 2; Tex.
Tax Code Ann. § 151.307(a) (West Supp. 2001). To claim such an exemption, a claimant must
provide proof of export. Tex. Tax Code Ann. § 151.307(b). One way to prove exportation is by
documentation issued by a customs broker licensed by the Comptroller, or by an authorized,
licensed employee of a customs broker, bearing the appropriate export stamp and certifying that
delivery of such property was made to a point beyond the territorial limits of the United States. 
Id. § 151.307(b)(2)(A)-(C). Such documents are commonly referred to as "export certificates." 

 As a licensed customs broker, David Ronald Macias and those under his authority
are authorized to issue export certificates. On March 11, 1995, Carolina Ramirez de Salinas, a
Mexican citizen, purchased several items of clothing from a Marshall Field's store in San Antonio. 
That same afternoon, Ramirez sought an export certificate for those items from Victor Garcia, an
employee of Macias. Garcia issued a stamped export certificate to Ramirez that afternoon. The
certificate stated the date of export as March 11, 1995; the time of export as 2:30 p.m; and the
place of export as Hidalgo, Texas. After obtaining the export certificate, Ramirez returned to
Marshall Field's and used the certificate to claim a sales-tax exemption and receive a refund of the
sales tax previously paid on her purchases. Ramirez did not take the merchandise from the United
States to Mexico until March 13, 1995, at approximately 3:30 p.m. 

 Based on these events, the Comptroller notified Macias of a proposed 120-day
suspension of his customs broker's license for "good cause." See id. § 157.157(f) (West Supp.
2001) (stating that Comptroller may suspend customs broker's license for good cause); 34 Tex.
Admin. Code § 3.360(n)(3) (2000) (listing acts or omissions of licensed customs broker that
constitute good cause for suspension). Macias requested an administrative hearing to contest the
suspension of his license. See Tex. Tax Code Ann. § 151.157(f). 

 Following a hearing, the administrative law judge ("ALJ") issued a proposed
decision, finding that Macias had violated section 151.307(b) of the Tax Code and Comptroller
rules 3.360(n)(3)(C) (delivering export certification if all or portion of property described thereon
was not actually exported at time and place on date reflected on certification form constitutes cause
for suspension) and 3.360(n)(3)(K) (failing to exercise responsible supervision and control over
conduct of export certification business, including inadequate supervision of employees, constitutes
good cause for suspension). See id. § 151.307(b); 34 Tex. Admin. Code § 3.360(n)(3)(C),
(n)(3)(K). The ALJ also recommended that the 120-day suspension of Macias's license be
probated and effective for only 60 days. The Comptroller, however, ordered Macias's license be
suspended for 120 days without probation. 

 Macias brought suit in district court, seeking judicial review of the Comptroller's
order and a declaratory judgment that his license should not be suspended because his issuance of
the export certificate to Ramirez was proper. The Comptroller moved for summary judgment. 
The district court granted the Comptroller's motion for summary judgment, finding that the
Comptroller's order suspending Macias's license was based on good cause, affirmed the 120-day
suspension, and denied Macias's request for declaratory relief. Macias then appealed to this
Court. On appeal, this Court held that the district court erred in conducting a substantial evidence 
review of the Comptroller's order and remanded the case to the district court for consideration by
trial de novo. See Macias v. Rylander, 995 S.W.2d 829, 833 (Tex. App.--Austin 1999, no pet.). 

 On remand, the Comptroller moved for partial summary judgment on the grounds
that (1) good cause exists to suspend Macias's customs broker's license, and (2) Macias's request
for declaratory relief should be denied. The district court granted the Comptroller's motion and
after a bench trial, signed a final judgment rendering judgment and assessing a ninety-day
suspension of Macias's license. Macias appeals this final judgment. 


DISCUSSION


Standard of Review

 Because the propriety of a summary judgment is a question of law, we review the
district court's decision de novo. Texas Dep't of Ins. v. American Home Assurance Co., 998
S.W.2d 344, 347 (Tex. App.--Austin 1999, no pet.). We will affirm the summary judgment on
appeal if any ground asserted in the motion for summary judgment is a valid ground for rendering
summary judgment. Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d 623, 626 (Tex. 1996). In its
motion for partial summary judgment, the Comptroller asserted that good cause exists to suspend
Macias's license because Macias violated the Comptroller's rules regulating customs brokers by
(1) improperly certifying goods as having been exported, (2) delivering a false export certification,
and (3) failing to properly supervise and control his export certification business. Our analysis
begins with a review of the export certificate at issue.


Export Certification

 Customs brokers are licensed by the Comptroller's office pursuant to the provisions
of section 151.157 of the Tax Code. See Tex. Tax Code Ann. § 151.157. The pertinent part of
that section provides as follows: 


A customs broker, or an authorized employee of a customs broker, licensed by the
comptroller under this section may issue documentation for the purpose of showing
the exemption of tangible personal property under Section 151.307(b)(2) only under
procedures established by the comptroller by rule. 



Id. § 151.157(a) (emphasis added). In recognition of section 151.157, the Comptroller has
adopted rules that specify procedures for the licensing of customs brokers. Comptroller's rule
3.360(m), titled, "Export certification form and contents," states that "an export certification must,
at a minimum, reflect . . . the date of sale, date and time the property was exported, and exact
location (e.g., the bridge or airport) where the property was exported." 34 Tex. Admin. Code
§ 3.360(m)(4) (2000) (emphasis added). The word "must" is mandatory in effect and should
generally be construed accordingly. Sanders v. Shelton, 970 S.W.2d 721, 730 (Tex. App.--Austin
1998, pet. denied). Thus, a valid export certificate requires, among other information, the date,
time, and place the property was exported; without such information, a certificate does not comply
with the Comptroller's rules and is therefore invalid.

 Both parties agree that goods become exempt from state sales tax as exports when
they enter the export stream of commerce under the "stream of export" doctrine. "Under this
doctrine, goods are not subject to state taxation once exportation has commenced, which occurs
when goods 'have been shipped, or entered with a common carrier for transportation, to another
state, or have been started upon such transportation in a continuous route or journey.'" Virginia
Indonesia Co. v. Harris County Appraisal Dist., 910 S.W.2d 905, 908 (Tex. 1995) (citing Coe
v. Errol, 116 U.S. 517, 527 (1886)). The "export stream" is defined as the final, continuous
journey out of the country, and tax immunity attaches as soon as the journey begins. Department
of Revenue v. Association of Wash. Stevedoring Cos., 435 U.S. 734, 752 (1978). It is not enough
that on the tax date there is a purpose and plan to export the property. See Empresa Siderurgica,
S.A. v. County of Merced, 337 U.S. 154, 157 (1949). Nor is it sufficient that in due course the
plan will be fully executed. See id. "It is the entrance of the articles into the export stream that
marks the start of the process of exportation. Then there is certainty that the goods are headed for
their foreign destination and will not be diverted to domestic use. Nothing else will suffice." Id.

 Macias contends that the district court erred in granting partial summary judgment
because the export certificate issued to Ramirez is accurate and valid. Macias argues that the
merchandise at issue entered the stream of export at the time Ramirez purchased it and was
therefore an "export" at the date, time, and place reflected on the export certificate. We thus are
called upon to determine whether the merchandise was "exported" at the date, time, and place
reflected on the export certificate.(1) Macias argues as follows: 


If the Merchandise is tax exempt, the tax did not accrue at the time of purchase. 
If the tax did not accrue at the time of purchase, as a matter of law, the
Merchandise was in the export stream of commerce and therefore an export at the
time of purchase. 



Adhering to the notion that the merchandise entered the export stream of commerce at the time of
purchase, Macias further argues that it traveled in the export stream until it crossed the Mexican
border. Thus, any date, time, and place listed between the point of purchase and the point at
which the merchandise eventually crossed the border would be the correct date, time, and place
of export. 

 A basic premise of Macias's syllogism, however, is flawed. Macias asserts that if
merchandise is tax exempt, sales tax simply never accrued on the sale. This reasoning
misconstrues the nature of the exemption. "A tax is imposed on each sale of a taxable item in this
state." Tex. Tax Code Ann. § 151.051 (West 1992). Said another way, tax accrues at the time
of sale. Thus, at the time Ramirez purchased the merchandise, the transaction was subject to
Texas sales tax unless she qualified for an exemption at that time, for "[t]he exemption attaches
to the export and not to the article before its exportation." Richfield Oil Corp. v. State Bd. of
Equalization, 329 U.S. 69, 80 (1946) (emphasis added). When an exemption from state sales tax
is claimed because merchandise is exported outside the United States, proof of export must be
shown. Tex. Tax Code Ann. § 151.307(b). Thus, while state taxes initially accrue on the
merchandise, they "are not subject to state taxation once exportation has commenced." Virginia
Indonesia Co., 910 S.W.2d at 908 (emphasis added). Generally then, tax accrues at the point of
sale, and the export exemption subsequently acts to exempt the merchandise from the tax. 

 There are circumstances in which merchandise can qualify for an exemption as an
export at the time of purchase. In support of his argument that Ramirez's merchandise was an
export at the time of purchase, Macias relies on Virginia Indonesia Co., in which the Texas
Supreme Court addressed the question of "whether [the petitioner's] goods were in the export
stream of commerce when the tax was assessed." Id. at 912. The petitioner, the Virginia
Indonesia Company ("VICO"), had purchased goods from vendors throughout the United States
on behalf of an Indonesian joint venture using a purchase order that committed the goods to
foreign export; the goods were transported from the vendors directly to an independent export
packer in Houston, and ultimately shipped to Indonesia. The supreme court determined that
"VICO's goods entered the export stream of commerce when they were shipped from the vendors
to the export packer's facility in Harris County because, at that point, the goods began their
movement to a precommitted foreign destination." Id.

 Also cited in Virginia Indonesia Co. is A.G. Spalding & Bros. v. Edwards, in which
the United States Supreme Court addressed the question of whether the sale of merchandise was
itself "a step in exportation." A.G. Spalding & Bros. v. Edwards, 262 U.S. 66, 68-69 (1923). In
A.G. Spalding & Bros., a Venezuelan firm ordered a New York commission house to buy
merchandise for export to Venezuela; the New York commission house placed the order with the
manufacturer with simultaneous instructions to deliver the packages to an export carrier. The
Court, striving to "fix a point at which, in the view of the purpose of the Constitution, the export
must be said to begin," concluded that "[t]he very act that passed the title . . . committed the goods
to the carrier that was to take them across the sea, for the purpose of export and with the direction
to the foreign port upon the goods." Id. at 69. Thus, the merchandise in both Virginia Indonesia
Co. and A.G. Spalding & Bros. was an "export" and became exempt from tax at or very near the
moment of purchase because, at the point of sale, an unequivocal certainty of export attached.

 Here, however, the certainty of export required for entry into the stream of export
did not attach to Ramirez's merchandise at the point of purchase when the sales tax was imposed.
At the time of purchase, the merchandise remained in the United States and in the hands of
Ramirez; the merchandise was never delivered to an independent party for export. Instead,
Ramirez herself took the merchandise from the United States to Mexico two days after the
purchase, on March 13. It is not enough that on March 11, 1995, Ramirez had a plan or purpose
to export the merchandise. See Empresa Siderurgica, 337 U.S. at 157. Nor is it enough that in
due course the plan was fully executed and the merchandise was ultimately exported into Mexico. 
In the interim, the merchandise might still have been diverted into the domestic market. Id. At
the time of purchase, the goods had not entered the stream of export and the process of exportation
had thus not begun. While we need not here determine the exact time the merchandise at issue
was definitively exported, we conclude that on the facts shown here, it was not exported at or
shortly after being purchased, as is reflected on the export certificate. 

 Because the export certificate does not reflect the accurate date, time, and exact
location the property was exported, the certificate violates the Comptroller's rules. See 34 Tex.
Admin. Code § 3.360(m)(4). Macias maintains that we cannot question the validity of the export
certificate because we are statutorily precluded from doing so based on section 151.307(c) of the
Tax Code, which states as follows: 


Documentation, including the stamp affixed to the documentation, that is provided
by a customs broker licensed by the comptroller under section 151.157 is presumed
valid in the absence of clear and convincing evidence that the tangible personal
property covered by the documentation was not exported outside the territorial
limits of the United States.



Tex. Tax Code Ann. § 151.307(c). Macias argues that this provision, coupled with the
Comptroller's stipulation that the merchandise Ramirez purchased was eventually exported to
Mexico, precludes summary judgment on any ground challenging the validity of the export
certificate. Macias's interpretation of this provision, however, leads to an absurd result. Under
his reasoning, any export certificate, even a patently false and misleading one, could never be
challenged on summary judgment if the merchandise described therein eventually left the country. 

 In construing a statute, we generally look to the plain language of the law;
nevertheless, the plain-meaning rule is subject to exceptions. Southwestern Bell Tel. Co. v. Public
Util. Comm'n, 888 S.W.2d 921, 927 (Tex. App.--Austin 1995, writ denied). In interpreting
statutes, we should not "attribute to the Legislature an intention to work an injustice" or produce
an absurd or unreasonable result. State v. Mauritz-Wells Co., 175 S.W.2d 238, 242 (Tex. 1943);
accord Southwestern Bell Tel. Co., 888 S.W.2d at 927. 

 Section 151.307(c) of the Texas Tax Code should be read together with
Comptroller's rule 3.360(n)(3)(C), which states that "delivering to any person a signed and/or
stamped export certification form if all or a portion of the property described thereon was not
actually exported at the time and place and on the date reflected on the certification form"
constitutes good cause for suspension. 34 Tex. Admin. Code § 3.360(n)(3)(C). Having
determined that the merchandise was not exported at the date, time, and place reflected on the
certificate, we hold that good cause exists to suspend Macias's license. Where, as here, the
district court does not specify the grounds for its granting of a movant's motion for summary
judgment, we may affirm the judgment if any of the grounds advanced within the motion are
meritorious. State Farm Fire & Cas. Co. v. S.S. & G.W., 858 S.W.2d 374, 380 (Tex. 1993). 
Because we determine that good cause exists for suspending Macias's license based on
Comptroller's rule 3.360(n)(3)(C), we affirm the summary judgment on that ground.


Suspension Period

 The Comptroller may suspend a license, after notice and hearing, for no fewer than
60 days and no more than 120 days if the broker's license has not been previously suspended or
revoked. 34 Tex. Admin. Code § 3.360(n)(4) (2000). The Comptroller requested that the district
court find that Macias's license should be suspended for ninety days, and the court so found. 
Because good cause exists for suspending Macias's license, the district court did not abuse its
discretion in assessing a ninety-day suspension, which is within the range for a first time offense.


CONCLUSION

 Because good cause exists for suspending Macais's license and the district court did
not abuse its discretion by assessing a ninety-day suspension period, we affirm the district court's
judgment. 



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Yeakel and Patterson.

Affirmed

Filed: February 28, 2001

Publish

1. We note that we are not undertaking a factual determination of when the goods were actually
exported; rather we are determining only whether the merchandise was exported at the date, time,
and place reflected on the export certificate, namely March 11, 1995; 2:30 p.m.; Hidalgo, Texas.


not begun. While we need not here determine the exact time the merchandise at issue
was definitively exported, we conclude that on the facts shown here, it was not exported at or
shortly after being purchased, as is reflected on the export certificate. 

 Because the export certificate does not reflect the accurate date, time, and exact
location the property was exported, the certificate violates the Comptroller's rules. See 34 Tex.
Admin. Code § 3.360(m)(4). Macias maintains that we cannot question the validity of the export
certificate because we are statutorily precluded from doing so based on section 151.307(c) of the
Tax Code, which states as follows: 


Documentation, including the stamp affixed to the documentation, that is provided
by a customs broker licensed by the comptroller under section 151.157 is presumed
valid in the absence of clear and convincing evidence that the tangible personal
property covered by the documentation was not exported outside the territorial
limits of the United States.



Tex. Tax Code Ann. § 151.307(c). Macias argues that this provision, coupled with the
Comptroller's stipulation that the merchandise Ramirez purchased was eventually exported to
Mexico, precludes summary judgment on any ground challenging the validity of the export
certificate. Macias's interpretation of this provision, however, leads to an absurd result. Under
his reasoning, any export certificate, even a patently false and misleading one, could never be
challenged on summary judgment if the merchandise described therein eventually left the country. 

 In construing a statute, we generally look to the plain language of the law;
nevertheless, the plain-meaning rule is subject to exceptions. Southwestern Bell Tel. Co. v. Public
Util. Comm'n, 888 S.W.2d 921, 927 (Tex. App.--Austin 1995, writ denied). In interpreting
statutes, we should not "attribute to the Legislature an intention to work an injustice" or produce
an absurd or unreasonable result. State v. Mauritz-Wells Co., 175 S.W.2d 238, 242 (Tex. 1943);
accord Southwestern Bell Tel. Co., 888 S.W.2d at 927. 

 Section 151.307(c) of the Texas Tax Code should be read together with
Comptroller's rule 3.360(n)(3)(C), which states that "delivering to any person a signed and/or
stamped export certification form if all or a portion of the property described thereon was not
actually exported at the time and place and on the date reflected on the certification form"
constitutes good cause for suspension. 34 Tex. Admin. Code § 3.360(n)(3)(C). Having
determined that the merchandise was not exported at the date, time, and place reflected on the
certificate, we hold that good cause exists to suspend Macias's license. Where, as here, the
district court does not specify the grounds for its granting of a movant's motion for summary
judgment, we may affirm the judgment if any of the grounds advanced within the motion are
meritorious. State Farm Fire & Cas. Co. v. S.S. & G.W., 858 S.W.2d 374, 380 (Tex. 1993). 
Because we de