TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-00-00297-CV







American Agape Foundation, Inc., Appellant



v.



Travis Central Appraisal District, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT


NO. 98-14116, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING







 American Agape Foundation, Inc. ("Agape") sought an exemption from ad valorem
taxation, claiming it qualified as a community housing development organization. See Tex. Tax
Code Ann. § 11.182. The Tax Code requires an entity seeking tax-exempt status under section
11.182 to be "organized" as a community housing development organization. Section 11.182
does not require an entity to be "certified" as a community housing development organization. 
See id. Because Agape produced uncontroverted summary judgment evidence that it satisfied all
the requirements of section 11.182, we conclude that the trial court erred in granting the Travis
Central Appraisal District's motion for summary judgment and in denying Agape's motion. We
reverse and render judgment for Agape. 



Discussion


 The standards for reviewing a Rule 166a(c) motion for summary judgment are well-established. The appellate court determines whether the movant established that there was no
genuine issue of material fact thereby entitling it to judgment as a matter of law. Lear Siegler,
Inc. v. Perez, 819 S.W.2d 470, 471 (Tex. 1991). 

 In deciding whether the movant has satisfied its burden of proof, all evidence
favorable to the non-movant is taken as true, every reasonable inference must be indulged in favor
of the non-movant and any doubts resolved in its favor. Nixon v. Mr. Property Mgmt. Co., 690
S.W.2d 546, 548-49 (Tex. 1985). When both parties move for summary judgment and the trial
court grants one and denies the other, the appellate court should determine all questions presented
and render the judgment that the trial court should have rendered. Commissioners Court v. Agan,
940 S.W.2d 77, 81 (Tex. 1997).

 A property owner must apply for tax-exempt status by filing an exemption
application before May 1st of the tax year for which the exemption is sought. Tex. Tax Code
Ann. § 11.43(d) (West Supp. 2001). Eligibility for and amount of an exemption are determined
by a claimant's qualifications on January 1 of the relevant tax year. Id. § 11.43(a). A person
who does not qualify for an exemption on January 1 of any year may not receive an exemption
that year. Id. 

 The chief appraiser determines an applicant's right to an exemption. Tex. Tax
Code Ann. § 11.45(a) (West 1992). After considering the application and relevant information
the chief appraiser shall: (1) approve the application and allow the exemption; (2) modify the
exemption applied for and allow the exemption as modified; (3) disapprove the application and
request additional information from the applicant in support of the claim; or (4) deny the
application. Id. If the chief appraiser requests additional information from an applicant, the
applicant must furnish it within thirty days after the date of the request or the application is
denied. Id. § 11.45(b). An applicant upon a showing of good cause may receive a one-time
extension to provide the additional information. Id. 

 Agape sought tax-exempt status for tax year 1998 pursuant to section 11.182 claiming it was
organized as a community housing development organization ("CHDO"). See Tex. Tax Code
Ann. § 11.182 (West Supp. 2001). Section 11.182 provides that such an organization is entitled
to an exemption from taxation on its improved or unimproved real property (1)
 it owns if the
organization:


- is organized as a community housing development organization;


- meets the requirements of a charitable organization provided by Section
11.18(e) and (f); (2)

- owns the property for the purpose of building or repairing housing on the
property to sell without profit to a low-income or moderate-income individual
or family satisfying the organization's eligibility requirements or to rent
without profit to such an individual or family; and 


- engages exclusively in the building, repair, and sale or rental of housing as
described by Subdivision 3 and related activities; and 


- meets the requirement of Section 11.43(a) and (b).


Id. § 11.182(a), (c).

 Section 11.182 provides that a CHDO has the meaning assigned to that term by 42
U.S.C. § 12704. Id. § 11.182(e). Section 12704 defines a CHDO as a nonprofit organization
that:


(A) has among its purposes the provision of decent housing that is affordable to
low-income and moderate-income persons;


(B) maintains, through significant representation on the organization's governing
board and otherwise, accountability to low-income community residents and,
to the extent practicable, low-income beneficiaries with regard to decisions on
the design, siting, development, and management of affordable housing; 


(C) has a demonstrated capacity for carrying out activities assisted under this Act;
and 


(D) has a history of serving the local community or communities within which
housing to be assisted under this Act is to be located.


42 U.S.C. § 12704(6) (1995). A nonprofit organization means any private, nonprofit organization
(including a State or locally chartered nonprofit organization) that: 


(A) is organized under State or local laws,


(B) has no part of its net earnings inuring to the benefit of any member, founder,
contributor, or individual, 


(C) complies with standards of financial accountability acceptable to the Secretary,
and 


(D) has among its purposes significant activities related to the provision of decent
housing that is affordable to low-income and moderate income persons. 



Id. § 12704(5).

 By letter dated July 14, 1998, the chief appraiser requested additional information
from Agape to consider its application. When Agape did not supply the additional information,
the chief appraiser denied the application. See Tex. Tax Code Ann. § 11.45(a). Agape protested
the denial before the appraisal review board ("ARB"), which also denied the exemption
application. Following the ARB's denial, Agape filed suit against TCAD pursuant to Chapter
42 of the Tax Code. See id. §§ 42.21-.29 (West 1992 & Supp. 2001). Both parties moved for
summary judgment. Agape argued that it was entitled to summary judgment because it satisfied
the requirements of section 11.182 as a matter of law. TCAD moved for summary judgment on
the ground that because Agape failed to supply the requested information within thirty days of
the chief appraiser's request, the exemption must be denied. Alternatively, TCAD requested
summary judgment because it contended Agape waived its right to assert exempt status because
of a settlement agreement. (3)
 Finally, TCAD argued in the alternative that it was entitled to
summary judgment because Agape did not satisfy the requirements of section 11.182 because it
was not certified as a CHDO until February 1999. The trial court granted TCAD's motion and
denied Agape's. Agape raises three issues on appeal. 

 In its second issue, Agape argues that section 11.182 requires an entity to be
"organized" as CHDO, not "certified" as a CHDO. In support of its position, Agape contends
that we should apply the plain meaning of section 11.182. TCAD argues that to obtain tax-exempt status under section 11.182, an entity must be certified (4) as a CHDO. Because Agape did
not have its certification until February 1999, TCAD argues that the trial court correctly granted
its summary judgment and denied Agape's. (5) TCAD argues that neither the appraisal district nor
the trial court are qualified to determine an organization's status as a CHDO in the absence of
a certification by some applicable governmental entity. It further argues that it cannot disprove
an organization's status as a CHDO. TCAD also argues that it should be able to rely on other
agency determinations when making its decision on exemption applications.

 We must decide initially the meaning of section 11.182's phrase "organized as" a
CHDO. Our interpretation of section 11.182 is governed by the well-established rules of statutory
construction. Under the plain meaning rule, if a statute is clear and unambiguous, resort to
extrinsic aids and rules of statutory construction is inappropriate and the statute should be given
its common everyday meaning. Cail v. Service Motors, Inc., 660 S.W.2d 814, 815 (Tex. 1983);
Borden, Inc. v. Sharp, 888 S.W.2d 614, 618 (Tex. App.--Austin 1994, writ denied). If the
meaning of the statute is plain, we apply it as written. Sorokolit v. Rhodes, 889 S.W.2d 239, 244
(Tex. 1994). The goal of statutory construction is to give effect to the intent of the legislature. 
Id. at 241. If the language of the statute is unambiguous, then the court must seek the legislative
intent as found in the plain and common meaning of the words and terms used. Id.; Monsanto
Co. v. Cornerstones Mun. Util. Dist., 865 S.W.2d 937, 939 (Tex. 1993). In applying the plain
and common meaning of the language, a court may not by implication enlarge the meaning of any
word in the statute beyond its ordinary meaning; such implication is inappropriate when intent
may be gathered from a reasonable interpretation of the statute as it is written. Sorokolit, 889
S.W.2d at 241. Common words should be interpreted as they are commonly used. Elgin Bank
v. Travis County, 906 S.W.2d 120, 121 (Tex. App.--Austin 1995, writ denied).

 The court must presume that every word in a statute has been used for a purpose
and that every word excluded to have been excluded for a purpose. Southwestern Bell Tel. Co.
v. Public Util. Comm'n, 888 S.W.2d 921, 926 (Tex. App.--Austin 1994, writ denied) (citing
Cameron v. Terrell & Garrett, Inc., 618 S.W.2d 535, 540 (Tex. 1981)). Construction of a statute
may not be done in isolation from the rest of the statute; the act must be considered as a whole
and not by interpreting a single sentence or phrase. Southwestern Bell, 888 S.W.2d at 926 (citing
Morrison v. Chan, 699 S.W.2d 205, 208 (Tex. 1985)). 

 We look first to the plain language of section 11.182. Section 11.182 predicates
an organization achieving tax-exempt status if the organization is "organized" as a CHDO. See
Tex. Tax Code Ann. § 11.182. The statutory language is clear and unambiguous. The section
does not contain any requirement that the entity seeking tax-exempt status be "certified." Section
11.182 expressly provides that the definition of a "CHDO" is that contained in 42 U.S.C. §
12704. Id. § 11.182(e). That section also does not require an entity to be certified. We presume
the legislature selected its wording carefully. Had the legislature intended the CHDO applicant
be "certified" as a CHDO rather than "organized" as one, it could have easily done so. (6) 

 We reject TCAD's arguments for several reasons. The language in section 11.182
demonstrates the legislature's intent for the chief appraiser to determine whether an entity is a
CHDO without the help of another agency's certification. Moreover, the chief appraiser is not
without alternatives. If the chief appraiser is in doubt about an entity's qualifications, he can
request more information and, if still not satisfied that the applicant met its burden, deny the
application. By denying the application, the property owner is put to its proof first before the
appraisal review board, and if not successful, in district court. Then, the court or jury is left to
decide its tax-exempt status, not the appraisal district. Moreover, the CHDO exemption
application warns the applicant that submitting false information on the application may be
prosecuted as a criminal violation. Tex. Penal Code Ann. § 37.10 (West Supp. 2001). We find
no support in section 11.182 for TCAD's argument that it should be allowed to rely on another
agency's certification as a prerequisite in making its determination on exemption applications. 
Accordingly, we hold that section 11.182 only requires that an entity demonstrate to the tax
appraiser that it is organized as a CHDO, along with satisfying the remaining requirements, and
does not require the entity to be certified as a CHDO. We sustain Agape's second issue.

 In its third issue, Agape argues that the provision in section 11.45 allowing the
chief appraiser to deny an exemption application if a property owner fails to provide additional
information upon request does not preclude further review by the appraisal review board and de
novo review by the district court. Agape argues that while the thirty-day deadline for providing
additional requested information to the chief appraiser authorizes the denial by the chief appraiser,
it does not conclusively bar the granting of an exemption. TCAD argues that if a property owner
fails to respond to a request for additional information and the chief appraiser subsequently denies
the application, the property owner's review before the ARB and the district court is limited to
deciding if the exemption was correctly denied. 

 While the chief appraiser may deny an exemption application based on the
applicant's failure to provide requested additional information, the applicant's right of review
exists both at the ARB and in district court. See Tex. Tax Code Ann. § 41.41(a), 42.23 (West
1992 & Supp. 2001). At the hearing before the appraisal review board, the property owner may
appear and offer evidence and argument. Id. § 41.45(b). Thus, the ARB review is not limited to
determining if the exemption was correctly denied. If the ARB were simply reviewing the
propriety of the chief appraiser's denial, there would be no need for the property owner to submit
evidence and argument. Rather, the ARB's review would be limited to the evidence submitted
to the chief appraiser.

 Similarly, district court review is also not as limited as TCAD suggests. The type
of review suggested by TCAD is a substantial evidence-type review not found in section 42.23. 
See id. § 42.23. The Tax Code provides that review in the district court is by trial de novo. Id.
§ 42.23(a); Board of Appraisal Review v. Protestant Episcopal Church Council, 676 S.W.2d 616,
623 (Tex. App.--1984, writ dism'd). Thus, the district court is not simply determining if the
exemption has been properly denied; the district court determines tax-exempt status de novo. 
Protestant Episcopal Church Council, 676 S.W.2d at 623.

 TCAD argues that Motorola, Inc. v. Tarrant County Appraisal District, 980
S.W.2d 899 (Tex. App.--Fort Worth 1998, no pet.) supports its argument that the failure to
comply with a request for additional information requires that the exemption be denied. Motorola
sought tax exempt status on its freeport goods pursuant to section 11.251 of the Tax Code. Id.
at 901. With a freeport exemption, if a property owner fails to timely deliver the requested
information, the "property owner forfeits the right to claim or receive the exemption for that
year." Tex. Tax Code Ann. § 11.251(h). Motorola failed to timely respond to a request from
the appraisal district for additional information. Motorola argued that it had complied with the
state constitution provision exempting its goods and challenged the constitutionality of section
11.251(h)'s forfeiture provision. Id. at 901. The court of appeals held that the forfeiture
provision in section 11.251(h) was not unconstitutional. Id. at 904. 

 We disagree with TCAD's interpretation of Motorola. Motorola argued that the
forfeiture provision limited its appeal to the ARB solely to compliance with the thirty-day
deadline. Id. at 903. The court expressly rejected Motorola's argument stating that there is "no
indication in the statute that a protest from a section 11.251(h) forfeiture would be limited to the
narrow issue that Motorola imposed on its protest." Id. at 903. If the forfeiture provision in
section 11.251(h) does not limit the scope of review, then the denial language in section 11.45(b)
also must not limit the scope of review. We believe Motorola supports our conclusion that the
review after a denial of an exemption for the failure to provide requested information is not
limited to whether the exemption was correctly denied. Rather, the review would be that provided
by section 41.45(b) and section 42.23(a). We sustain Agape's third issue. 

 In its first issue, Agape argues that it proved its status as a CHDO as a matter of
law. It is well-settled that exemptions from taxation are subject to strict construction. North
Alamo Water Supply Corp. v. Willacy County Appraisal Dist., 804 S.W.2d 894, 899 (Tex. 1991). 
Accordingly, the organization seeking the exemption must clearly show that it falls within the
statutory exemption. Id.; Circle C Child Dev. Ctr., Inc. v. Travis Cent. Appraisal Dist., 981
S.W.2d 483, 486 (Tex. App.--Austin 1998, no pet.). 

 In this case, Agape supported its motion for summary judgment with the affidavit
of its executive director and president, Daniel P. Organ. Organ's affidavit and attachments
tracked the language and requirements of both section 11.182 and 12 U.S.C. section 12704. 
TCAD did not object to Agape's summary judgment evidence and did not offer controverting
evidence. Accordingly, we conclude that Agape demonstrated that as of January 1, 1998, it
satisfied the requirements of section 11.182 and 12 U.S.C. section 12704 for tax-exempt status
as a CHDO. We sustain Agape's first issue. 


Conclusion


 We conclude that section 11.182 requires an entity to demonstrate to the tax
appraiser that it is organized as a CHDO; it need not be certified as a CHDO. Agape satisfied
its burden of proving by its uncontroverted summary judgment evidence that it met all the
requirements of both section 11.182 and 12 U.S.C. section 12704 to establish its tax-exempt
status. Because the standard of review under section 42.43 is de novo, the issue before the district
court is not confined to whether the tax appraiser properly denied the exemption because Agape
failed to submit the requested additional information within thirty days, but whether Agape is
entitled to the exemption. Accordingly, we sustain Agape's issues, reverse the summary judgment
of the trial court and render judgment that Agape is entitled to tax-exempt status as a community
housing development organization for tax year 1998.



 

 Jan P. Patterson, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Patterson

Reversed and Rendered

Filed: March 29, 2001

Do Not Publish

1.   Section 11.182 also provides for an exemption for a community housing development
organization's personal property. See Tex. Tax Code Ann. § 11.182(d) (West Supp. 2001). Only
Agape's real property is the subject of the exemption protest. 

2.    Section 11.18 (e) provides as follows:


A charitable organization must be operated in a way that does not result in accrual
of distributable profits, realization of private gain resulting from payment of
compensation in excess of a reasonable allowance for salary or other compensation
for services rendered, or realization of any other form of private gain and, if the
organization performs one or more of the charitable functions specified by
Subsection (d) of this section other than a function specified in Subdivision (1), (2),
(8), (9), (12), (16) or (18), be organized as a nonprofit corporation as defined by the
Texas Non-Profit Corporation Act. (citations omitted). 


Tex. Tax Code Ann. § 11.18(e) (West Supp. 2001). Section 11.18(f) provides that a
charitable organization must:


(1) use its assets in performing the organization's charitable functions or the
charitable functions of another charitable organization; and 


(2) by charter, bylaw, or other regulation adopted by the organization to
govern its affairs direct that on discontinuance of the organization by
dissolution or otherwise:


 (A) the assets are to be transferred to this state, the United States, or an
educational, religious, charitable, or other similar organization that
is qualified as a charitable organization under Section 501(c)(3),
Internal Revenue Code of 1986, as amended; or


 (B) if required for the organization to qualify as a tax-exempt
organization under Section 501(c)(12), Internal Revenue Code of
1986, as amended, the assets are to be transferred directly to the
organization's members, each of whom, by application for an
acceptance of membership in the organization, has agreed to
immediately transfer those assets to this state or to an educational,
religious, charitable, or other similar organization that is qualified
as a charitable organization under Section 501(c)(3), Internal
Revenue Code of 1986, as amended, as designated in the bylaws,
charter, or regulation adopted by the organization. (citations
omitted). 


Id. § 11.18(f).
3.   Because TCAD did not pursue this argument on appeal, it will not be discussed. 

4.   It is not clear from the record why an entity would seek certification as a CHDO from
the Texas Department of Housing and Community Affairs. 
5.   Agape received its certification as a "Community Housing Development Organization"
from the Texas Department of Housing and Community Affairs on February 3, 1999, after
submitting an application in December 1998. TCAD approved Agape's request for tax exempt
status for tax year 1999.
6.   We note that the Tax Code predicates a number of exemptions with the "organized"
language found in section 11.182, without "certification" requirements. See, e.g., Tex. Tax Code
Ann. §§ 11.18(d), 11.20(c)(1), 11.21(d)(1), and 11.23(i)(1).


1) Regular"> 

 Jan P. Patterson, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Patterson

Reversed and Rendered