TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-01-00409-CV






GSC Enterprises, Inc., Appellant



v.



Carole Keeton Rylander, Comptroller of Public Accounts of the State of Texas;


and John Cornyn, Attorney General of the State of Texas, Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT


NO. 98-05733, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING 






 Appellant GSC Enterprises ("GSC") appeals from the district court's grant of 
summary judgment in favor of the Comptroller and the Attorney General (collectively "the
Comptroller") and denial of GSC's motion for summary judgment. GSC's appeal hinges on the
interpretation of section 72.103 of the Texas Property Code. See Tex. Prop. Code Ann. § 72.103
(West Supp. 2002). Because our interpretation of section 72.103 supports the district court's
judgment, we will affirm.


FACTUAL AND PROCEDURAL BACKGROUND



 GSC is a Texas corporation that issues, administers, and redeems money orders. It
typically partners with small retail outlets such as convenience stores and independent grocers. 
Money orders have blanks in which the purchaser identifies the sender and the payee, but the retailer
typically retains only the money order's amount and serial number. Most money orders are promptly
redeemed, but a small percentage remain unredeemed. Purchasers of GSC money orders agree to
pay a monthly service charge on unredeemed money orders. Prior to July 1998, GSC had a policy
of charging one dollar per month from the date of purchase if the money order was not redeemed
within one year of the purchase date. This policy was generally not enforced against retailers who
accepted these money orders. After July 1998, GSC charged one dollar per month from the date of
purchase if the money order was not used within two years of the purchase date. A service charge
accrued until the money order was redeemed, the service charge exceeded the money order's face
value, or the money order was deemed abandoned.

 GSC must track its unredeemed money orders and eventually report them to the
Comptroller as abandoned property. At the time of the events germane to this lawsuit, the Texas
Property Code deemed a money order abandoned five years after it was issued or five years after the
last communication from the owner. Once a money order is considered abandoned, GSC must turn
it over to the Comptroller.

 After a 1998 audit, the Comptroller issued GSC a deficiency notice for the money
orders GSC surrendered in 1996 and 1997, stating that under the Comptroller's interpretation of the
property code, GSC should not have withheld service charges from the money orders. GSC
disagreed with the Comptroller's interpretation and in May 1998, filed a petition for declaratory
judgment against the Comptroller. GSC deposited the contested funds in the court's registry. The
Comptroller answered with a general denial and counterclaimed against GSC to recover the
deficiency, plus penalties, interest, and attorney's fees. In 2000, the parties filed competing motions
for summary judgment. After hearing the motions, the district court granted the Comptroller's
motion and denied GSC's motion. By four issues, GSC appeals the judgment, claiming that the trial
court erred (1) in its interpretation of the property code, (2) in granting the Comptroller's motion for
summary judgment and denying GSC's motion, (3) in rendering judgment that GSC take nothing,
and (4) in rendering judgment that the Comptroller recover penalties and interest. At stake is the
$1,689,728.01 deficiency, plus accumulated interest, penalties, and attorney's fees. (1)


DISCUSSION


Standard of Review

 The parties in this case filed competing motions for summary judgment. When
examining cross-motions for summary judgment, the reviewing court should analyze the summary
judgment evidence produced by each side and determine all questions presented. Commissioners
Court v. Agan, 940 S.W.2d 77, 81 (Tex. 1997). The reviewing court should then render such
judgment as the trial court should have rendered. Id.

 Both motions for summary judgment turn on the statutory construction of Texas
Property Code section 72.103; thus, the case is ideally suited for summary judgment. "[M]atters of
statutory construction are questions of law for the court to decide rather than issues of fact." Johnson
v. City of Fort Worth, 774 S.W.2d 653, 656 (Tex. 1989). The purpose of summary judgment is to
provide a method of terminating a case when it is clear that only a question of law is involved and
there is no genuine issue of material fact. Gaines v. Hamman, 358 S.W.2d 557, 563 (Tex. 1962);
Jones v. Texas Pac. Indem. Co., 853 S.W.2d 791, 794 (Tex. App.--Dallas 1993, no writ).

 The appellate court reviews issues involving statutory construction de novo. Texas
Dep't of Pub. Safety v. LaFleur, 32 S.W.3d 911, 915 (Tex. App.--Texarkana 2000, no pet.). The
court's primary task when construing a statute is to give effect to the intent of the Legislature. Tex.
Gov't Code Ann. § 312.005 (West 1998); Helena Chem. Co. v. Wilkins, 47 S.W.3d 486, 493 (Tex.
2001). To accomplish this, the court scrutinizes the statute's language. Id. The court should not
"attribute to the legislature an intention to work an injustice" or to produce an absurd or
unreasonable result. Southwestern Bell Tel. Co. v. Public Util. Comm'n, 888 S.W.2d 921, 927 (Tex.
App.--Austin 1994, writ denied) (quoting State v. Mauritz-Wells Co., 175 S.W.2d 238, 242 (Tex.
1943)).


Property Code Section 72.103

 When legislative intent is plainly expressed in the language of the statute, the court
should give this intent effect. See Tex. Gov't Code Ann. § 312.005; Helena Chem. Co., 47 S.W.3d
at 493. In addition, the court should consider the statute as a whole, in an attempt to maintain
harmony among all of the provisions. Helena Chem Co., 47 S.W.3d at 493. The general intent of
section 72.103 is evident from its title "Preservation of Property." The value of unclaimed property
is to be maintained. As GSC points out in its brief, the primary purpose of the unclaimed property
laws in Texas is to reunite owners with their property. See Melton v. State, 993 S.W.2d 95, 97 (Tex.
1999). Property which cannot be reunited with its owner is turned over to the State. See Tex. Prop.
Code Ann. § 74.301 (West Supp. 2002). Specifically, section 72.103 provides:


 Notwithstanding any other provision of this title, a holder of abandoned property
shall preserve the property and may not at any time, by any procedure, including a
deduction for service, maintenance, or other charge, transfer or convert to the profits
or assets of the holder or otherwise reduce the value of the property. For purposes
of this section, value is determined as of the date of the last transaction or contact
concerning the property.


Id. § 72.103 (emphasis added). (2) We look to the statute itself for definitions of terms used. Hayek
v. Western Steel Co., 478 S.W.2d 786, 793 (Tex. 1972); 67 Tex. Jur. 3d Statutes § 106 (1989). 
"Abandoned property" as applied to money orders is defined by Texas Property Code as follows:


 A money order . . . is presumed to be abandoned on the latest of: (1) the fifth
anniversary of the date on which the money order was issued; (2) the fifth
anniversary of the date on which the issuer of the money order last received from the
owner of the money order communication concerning the money order; or (3) the
fifth anniversary of the date of the last writing, on file with the issuer, that indicates
the owner's interest in the money order.



Tex. Prop. Code Ann. § 72.102(c). (3) We have been unable to find any case law interpreting section
72.103 or 72.102(c).

 GSC argues that after examining the plain language of the statute, one should
conclude that the money order is not "abandoned" until five years after the last transaction or contact
regarding the money order. GSC includes as a "transaction or contact" its unilateral monthly
deductions of service charges from the money order, which begin two years from the money order
purchase date. (4) According to GSC, the "value" of the money order is what remains at the time the
money order is deemed "abandoned."

 GSC's position that its service charges constitute a transaction or contact is a strained
interpretation that has the additional disadvantage of creating an absurd outcome that the Legislature
could not have intended. The words of a statute should be interpreted according to their ordinary
meaning, not in a strained manner. Howell v. Mauzy, 899 S.W.2d 690, 704 (Tex. App.--Austin
1994, writ denied). Furthermore, the court should not attribute to the Legislature an intention to
produce an absurd or unreasonable result. Southwestern Bell, 888 S.W.2d at 927. Instead, we
presume that the Legislature intended a just and reasonable result. See Helena Chem. Co., 47
S.W.3d at 493. Under GSC's interpretation, every monthly service charge that GSC levies against
an uncashed money order counts as a transaction that resets the moment in time at which the value
of the money order is determined. Under this logic, GSC is free to unilaterally reduce the value of
a money order by one dollar per month on the strength of its own unilateral assessment against the
money order. This allows GSC, by deducting service charges, to appropriate the entire value of the
money order in direct contravention of the statute's primary purpose--to preserve the value of
unclaimed property. Therefore, GSC's interpretation produces an absurd or unreasonable result that
we presume the Legislature did not intend.

 If the "last transaction or contact" is not the date of GSC's most recent imposition of
a monthly service charge, it must be the date of the last contact or transaction between the owner of
the money order and its issuer. Having set the value of the property at the last contact or transaction
between the purchaser and the retailer or holder, the language regarding "value" assumes a logical
significance. According to the language of section 72.103, the "last transaction or contact" is the
moment that the "value" of the property is to be fixed, for purposes of preservation. Typically, the
last contact or transaction between the purchaser of the money order and the holder is the moment
when the money order is issued. According to the language of the statute then, the value of the
property to be preserved will almost always be the face value of the money order. Thus, GSC may
not reduce the value of the money order below its face value in the absence of further contacts or
transactions involving the owner and the issuer. 

 GSC also suggests that it is significant that the Legislature chose to call money orders
"abandoned," without reference to a period of "inactivity." It points to the fact that the Legislature
called the pre-abandonment period during which service charges may not be deducted from a
depository account or a safe deposit box a period of inactivity. See Tex. Prop. Code Ann. §§ 73.003;
.101 (West Supp. 2002). According to GSC, the Legislature could have devised a similar scheme
for money orders and chose not to do so. We agree that every word excluded from a statute must
be presumed to have been excluded for a purpose. See Cameron v. Terrell & Garrett, Inc., 618
S.W.2d 535, 540 (Tex. 1981). But when we consider the statute as a whole, in an attempt to
maintain harmony among all of the provisions of the Unclaimed Property Title, we note that Chapter
73 addresses not only depository accounts and safe deposit boxes, but also checks. See Tex. Prop.
Code Ann. § 73.102. (5) A money order is more analogous to a check than a safe deposit box or an
account. Unlike safe deposit boxes and depository accounts, the contents of which may constantly
fluctuate, a check, like a money order, is a one-time transaction that represents one unfluctuating
value. Section 73.102 speaks of "abandonment" of checks, without reference to a period of
inactivity. Id. In attaching no significance to the lack of inclusion of a period of inactivity with
regard to money orders, we do not create disharmony between the provisions of the Act.

 We conclude that section 72.103 unambiguously provides that a holder of a money
order may not deduct a contracted-for service charge from the money order that is eventually deemed
abandoned property. After five years, the holder of the money order is to submit the entire face value
to the Comptroller. Issue one is overruled. (6)


Penalties and Interest

 Having held that the Comptroller's interpretation of the statute is correct, we now turn
to GSC's argument that the Comptroller abused its discretion by failing to waive penalties and
interest on the withheld service charges under section 74.707(a) of the property code. See id. ("The
comptroller may waive penalty or interest imposed on delinquent property if the comptroller
determines that the holder has made a good faith effort to comply with Chapters 72-75."). GSC
argues that the joint stipulation it entered into with the Comptroller by which it agreed to pay some
of the disputed funds into a court registry is evidence of its good faith. The Comptroller argues that
there is no statute authorizing judicial review of a section 74.707 determination, and, alternatively,
that its determination was not an abuse of discretion. As GSC cites no authority in its brief for its
argument, we find it has waived this issue on appeal. See Tex. R. App. P. 38.1(h); Trenholm v.
Ratcliff, 646 S.W.2d 927, 934 (Tex. 1983). Furthermore, we note that the Comptroller waived some
of the penalties and interest pursuant to the parties' joint stipulation. We overrule issue four.


CONCLUSION


 Because our interpretation of Texas Property Code section 72.103 supports the district
court's judgment, we overrule all of GSC's issues on appeal and affirm the judgment of the district
court.



 

 David Puryear, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Puryear

Affirmed

Filed: August 30, 2002

Publish
1. The court awarded the Comptroller penalties of $29,341.38, interest of $21,202.60, plus
accumulated interest in the court's registry, and attorney's fees.
2. In 2001, the Legislature amended section 72.103, to take effect June 1, 2002, as follows:


Notwithstanding any other provision of this title except a provision of this section
relating to a money order, a holder of abandoned property shall preserve the property
and may not at any time, by any procedure, including a deduction for service,
maintenance, or other charge, transfer or convert to the profits or assets of the holder
or otherwise reduce the value of the property. For purposes of this section, value is
determined as of the date of the last transaction or contact concerning the property,
except that in the case of a money order, value is determined as of the date the
property is presumed abandoned under Section 72.102(c). If a holder imposes service,
maintenance, or other charges on a money order prior to the time of presumed
abandonment, such charges may not exceed the amount of 50 cents per month for each
month the money order remains uncashed prior to the month in which the money order
is presumed abandoned.


See Act of May 5, 2001, 77th Leg., R.S., ch. 179, § 2, 2001 Tex. Gen. Laws 360-61.


 GSC's claim was pending before the 2001 amendments and is governed by the law applicable
at that time. 
3. Effective June 1, 2004, money orders will be considered abandoned after seven years instead
of five. See Act of May 5, 2001, 77th Leg., R.S., ch. 179, § 1, 2001 Tex. Gen. Laws 360.
4. The statute does not define "contact" or "transaction."
5. A check is presumed to be abandoned on the latest of: (1) the third anniversary of the
date the check was payable; (2) the third anniversary of the date the issuer or payor of the
check last received documented communication from the payee of the check; or (3) the
third anniversary of the date the check was issued if, according to the knowledge and
records of the issuer or payor of the check, during that period, a claim to the check has
not been asserted or an act of ownership by the payee has not been exercised. 


Tex. Prop. Code Ann. § 73.102 (West Supp. 2002).
6. GSC's second and third issues are encompassed by issue one and, thus, are also overruled.