TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00566-CV







Texas Department of Insurance; Jose Montemayor, Commissioner of Insurance; John
Cornyn, Texas Attorney General; Carole Keeton Rylander, Texas Comptroller of

Public Accounts; and Texas Public Finance Authority, Appellants (1)


v.



American Home Assurance Company and The Insurance Company of the State of
Pennsylvania, Appellees





FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT


NO. 97-06217, HONORABLE PAUL R. DAVIS, JR., JUDGE PRESIDING







 American Home Assurance Company and the Insurance Company of the State of
Pennsylvania (collectively "appellees") sued appellants (collectively "the State") for a partial
refund of taxes and interest paid to the State under protest. The parties filed cross-motions for
summary judgment. The district court denied the State's motion and granted summary judgment
in favor of appellees. We will affirm the judgment of the district court.


THE CONTROVERSY

 This is a case involving workers' compensation insurance taxes assessed annually
under the Texas Workers' Compensation Act (2) (the "Act") and the Texas Insurance Code (the
"Code"). Under the Act, "workers' compensation insurance coverage" means: (1) an approved
insurance policy to secure the payment of compensation; (2) self-insurance to secure the payment
of compensation; or (3) coverage provided by a governmental entity to secure the payment of
compensation. See Tex. Lab. Code Ann. § 401.011(44) (West 1996). Appellees are foreign
property and casualty insurance companies authorized by the Texas Department of Insurance (the
"Department") to write workers' compensation insurance in Texas. Id. § 401.011(28). In
addition to traditional workers' compensation insurance, appellees offer optional deductible
insurance plans that allow policyholders to self-insure for the deductible amount. See Tex. Ins.
Code Ann. art. 5.55C(a) (West Supp. 1999).

 Each workers' compensation insurance carrier, other than a governmental entity,
is required to pay a general maintenance tax to support the administration of the Act and the
prosecution of workers' compensation fraud. See Tex. Lab. Code Ann. § 403.002(a) (West 1996
& Supp. 1999). The general maintenance tax for insurance companies "may not exceed an amount
equal to two percent of the correctly reported gross workers' compensation insurance premiums." 
Id. § 403.002(b). (3) 

 Workers' compensation insurance companies must also pay a tax to fund the
operations of the Department. This operations maintenance tax is assessed on "the correctly
reported gross workers' compensation insurance premiums of all authorized insurers writing
workers' compensation insurance in this state." See Tex. Ins. Code Ann. art. 5.68(a) (West Supp.
1999). Prior to 1993, the general maintenance tax and the operations maintenance tax were
calculated and collected based on actual premiums written. In 1993, the Texas Legislature added
the following section to article 5.68:


For purposes of this article and Section 2.22, Texas Workers' Compensation Act
[formerly Tex. Rev. Civ. Stat. art. 8308-2.22, currently Tex. Lab. Code Ann.
§ 403.002], gross workers' compensation insurance premiums include the modified
annual premium of a policyholder that purchases a deductible pursuant to Article
5.55C of this code, and the rate of assessment shall be applied to the modified
annual premium prior to application of any deductible premium credit. 



Act of June 17, 1993, 73d Leg., R.S., ch. 685, § 3.16, 1993 Tex. Gen. Laws 2559, 2589
(codified at Tex. Ins. Code Ann. art. 5.68(b) (West Supp. 1999)). Thus, by its express terms, the
1993 amendment expanded the tax base for both the general maintenance tax and the operations
maintenance tax to include both actual premiums written and premiums that would have been
written had certain policyholders not chosen to partially self-insure.

 A third type of maintenance tax, referred to by the parties as the "surcharge," is
used to retire $300 million dollars in bonds issued by the Texas Public Finance Authority to raise
money for the Texas Workers' Compensation Insurance Fund (the "Fund"), a corporate body
organized for the purpose of providing workers' compensation coverage to Texas employers. See
Act of August 25, 1991, 72d Leg., 2d C.S., ch. 12, §§ 18.07-.19, 1991 Tex. Gen. Laws 342,
342-61 (codified at Tex. Ins. Code Ann. arts. 5.76-3-.76-5, since amended); American Home
Assurance v. Texas Dep't of Ins., 907 S.W.2d 90, 92 (Tex. App.--Austin 1995, writ denied). The
surcharge is equal to a percentage of gross workers' compensation insurance premiums (4) and is
assessed against: "(1) each insurance company writing workers' compensation insurance in this
state; (2) each certified self-insurer . . .; and (3) the fund." Tex. Ins. Code Ann. art. 5.76-5,
§ 10(a) (West Supp. 1999). The surcharge must be set in an amount sufficient to pay all debt
service on the bonds. Id. art. 5.76-5, § 10(b). The surcharge "is set by the commissioner in the
same time and shall be collected by the comptroller on behalf of the fund in the same manner as
provided under Article 5.68 of this code . . . ." Id.

 For calendar years 1994 through 1996, the State applied the definition of "gross
workers' compensation insurance premiums" from article 5.68(b) of the Code to article 5.76-5,
section 10 and assessed appellees a surcharge based upon both actual premiums written and
modified premiums arising from the purchase of deductibles. Appellees protested, (5) contending
that the 1993 amendment to article 5.68 changed the tax base for the general maintenance tax and
the operations maintenance tax, but not for the surcharge. Appellees sued the State in district
court for a partial refund. Appellees also sought a declaratory judgment that the surcharge should
be based solely upon actual written workers' compensation insurance premiums.

 In its amended final judgment, the district court awarded appellees actual damages
equal to the difference between the surcharge taxes appellees remitted to the State under protest
for calendar years 1994 through 1996 and what appellees would have owed if the State had
assessed the surcharge on workers' compensation insurance premiums actually written for those
years. In addition, the court ordered that: (1) "the maintenance tax for the Texas Workers'
Compensation Insurance Fund must be based on actual written workers' compensation insurance
premiums for each year beginning with 1994 and continuing until such time that the Texas
Legislature enacts an appropriate amendment"; (2) "the definition of gross workers' compensation
insurance premiums in Tex. Ins. Code, art. 5.68(b), does not apply to Tex. Ins. Code art. 5.76-5,
§ 10"; and (3) the State is "prohibited from setting and collecting" from appellees surcharges
"based on other than the amount of annual workers' compensation insurance actually written by
them." 


DISCUSSION AND HOLDINGS

 Because the suitability of summary judgment is a question of law, we review the
trial court's decision de novo. See Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994);
Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985). Where both
parties file a motion for summary judgment, and one is granted and one is denied, we determine
all questions presented and render such judgment as the trial court should have rendered. See
Commissioners Court v. Agan, 940 S.W.2d 77, 81 (Tex. 1997).

 In its only issue presented, the State argues that the district court erred by refusing
to apply the definition of "gross workers' compensation insurance premiums" in article 5.68(b)
to the surcharge tax of article 5.76-5, section 10. The State acknowledges that article 5.68(b) does
not specifically refer to the surcharge but contends that nothing in the article expressly limits the
application of the amended definition of "gross workers' compensation insurance premiums" to
article 5.68 and Labor Code section 403.002. The State also argues that because the legislature
is presumed to enact law with reference to other statutes on the same subject, see Allen Sales &
Servicenter, Inc. v. Ryan, 525 S.W.2d 863, 866 (Tex. 1975), the surcharge statute must be
interpreted with reference to amended article 5.68. The State contends that the legislature's intent
to incorporate the provisions of article 5.68 into the surcharge statute is evidenced by part (b) of
article 5.76-5, section 10, which states: "The maintenance tax surcharge is set by the
commissioner in the same time and shall be collected by the comptroller on behalf of the fund in
the same manner as provided under Article 5.68 . . . ." Tex. Ins. Code Ann. art. 5.76-5, § 10(b)
(West Supp. 1999). 

 Appellees respond that the 1993 amendment to article 5.68 specifically and
unambiguously changed the tax base for the general maintenance tax and the operations
maintenance tax alone. Appellees argue that the clear language of the amendment forecloses the
argument that the amended definition of "gross workers' compensation insurance premiums"
applies to the surcharge. Furthermore, appellees contend that it must be presumed that the
legislature knew all three workers' compensation insurance taxes had been assessed on actual
written premiums and deliberately amended article 5.68 to include only two of those three taxes.

 Our primary objective when we construe a statute is to determine and give effect
to the intent of the legislature. See Tex. Gov't Code Ann. § 312.005 (West 1998); see also
Liberty Mut. Ins. Co. v. Garrison Contractors, Inc., 966 S.W.2d 482, 484 (Tex. 1998); Texas
Property & Casualty Ins. Guar. Assoc. v. Southwest Aggregates, Inc., 982 S.W.2d 600, 608 (Tex.
App.--Austin 1998, no pet.). The legislature's intent should be determined by examining the
language used in the statute. See In re Bay Area Citizens Against Lawsuit Abuse, 982 S.W.2d 371,
380 (Tex. 1998); City of Austin v. Quick, 930 S.W.2d 678, 687 (Tex. App.--Austin 1996), aff'd,
41 Tex. Sup. Ct. J. 751 (May 8, 1998), reh'g granted, 42 Tex. Sup. Ct. J. 154 (Nov. 19, 1998).

 The language used by the legislature in article 5.68(b) is clear and unequivocal:
"For purposes of this article and Section 2.22, Texas Workers' Compensation Act . . ., gross
workers' compensation insurance premiums include the modified annual premium of a
policyholder that purchases a deductible pursuant to Article 5.55C of this Code . . . ." No
mention is made of any tax other than the general maintenance tax and the operations maintenance
tax. Every word, phrase, and expression in a statute should be read as if it were deliberately
chosen for a purpose. See State v. Evangelical Lutheran Good Samaritan Soc'y, 981 S.W.2d 509,
511 (Tex. App.--Austin 1998, no pet.). Moreover, every word excluded from a statute must be
presumed to have been excluded for a purpose. See Quick, 930 S.W.2d at 687 (citing Cameron
v. Terrell & Garrett, Inc., 618 S.W.2d 535, 540 (Tex. 1981)).

 We hold that the definition of "gross workers' compensation insurance premiums"
in article 5.68(b) applies to only that article and section 403.002 of the Labor Code. The
legislature's failure to include any reference to article 5.76-5 in the 1993 amendment of article
5.68 shows that it intended the surcharge to continue to be assessed on actual premiums written,
rather than on a combination of actual premiums and modified deductible premiums. When the
language of a statute is clear and unambiguous, we need not resort to extrinsic aids to construe it,
but should give the statute its common meaning. See St. Luke's Episcopal Hosp. v. Agbor, 952
S.W.2d 503, 505 (Tex. 1997); Meno v. Kitchens, 873 S.W.2d 789, 792 (Tex. App.--Austin 1994,
writ denied) (quoting Minton v. Frank, 545 S.W.2d 442, 445 (Tex. 1976) ("Where the intent is
apparent from the words of the statute, it is not necessary . . . to make any analysis of the extrinsic
evidence of legislative intent.")).

 We turn now to the State's argument that the definition of "gross workers'
compensation insurance premiums" in article 5.68(b) should be applied to article 5.76-5, section
10 because the "surcharge is set by the commissioner in the same time and shall be collected by
the comptroller on behalf of the fund in the same manner as provided under Article 5.68 of this
code." Tex. Ins. Code Ann. art. 5.76-5, § 10(b) (West Supp. 1999). The State contends that by
including the phrase "in the same manner," the legislature intended to incorporate the provisions
of article 5.68 into the surcharge tax statute. We disagree.

 The general maintenance tax statute contains language similar to article 5.76-5,
section 10(b): "A workers' compensation insurance company is taxed at the rate established under
Section 403.003. The tax shall be collected in the manner provided for collection of other taxes
on gross premiums from a workers' compensation insurance company as provided in Article 5.68,
Insurance Code." Tex. Lab. Code Ann. § 403.002(c) (West 1996). Notwithstanding this
language, the legislature felt compelled to expressly state in article 5.68 that the amended
definition of "gross workers' compensation insurance premiums" applies to the general
maintenance tax. This indicates that language mandating that taxes be collected "in the manner"
or "in the same manner" as provided by article 5.68 is not as expansive as the State contends. 
Instead of linking a tax statute to all the provisions of article 5.68, the language appears to merely
adopt by reference the provisions of article 5.68 concerning the mechanics of tax collection, such
as when the taxes should be collected, where the collected taxes should be deposited, and the
agency to which the taxes should be allocated. See Tex. Ins. Code Ann. art. 5.68 (West Supp.
1999).

 Moreover, we must presume that when the legislature added the revised definition
of "gross workers' compensation insurance premiums" to article 5.68, it understood that all three
workers' compensation insurance taxes had been assessed on actual premiums written by insurance
companies. See Acker v. Texas Water Comm'n, 790 S.W.2d 299, 301 (Tex. 1990) ("A statute is
presumed to have been enacted by the legislature with complete knowledge of the existing law and
with reference to it."). Therefore, the legislature's decision to omit any mention of the surcharge
must be viewed as a deliberate act and given full effect. Accordingly, we hold that the surcharge
statute fails to incorporate article 5.68(b)'s definition of "gross workers' compensation insurance
premiums." We overrule appellants' sole point of error.


CONCLUSION

 The definition of "gross workers' compensation insurance premiums" in article
5.68(b) of the Insurance Code does not apply to the surcharge maintenance tax of article 5.76-5,
section 10(b). Because the State assessed and collected surcharge taxes from appellees based upon
other than actual premiums written, we affirm the judgment of the district court.



 

 Jan P. Patterson, Justice

Before Chief Justice Aboussie, Justices Kidd and Patterson

Affirmed

Filed: July 29, 1999

Publish
1. This appeal was originally filed in the names of the predecessors to the present
Commissioner, Attorney General, and Comptroller. We have substituted the current holders of
those offices as the proper parties to this proceeding. See Tex. R. App. P. 7.2(a).
2. Tex. Lab. Code Ann. §§ 401.001-506.001 (West 1996 & Supp. 1999).
3. The tax for certified self-insurers is based upon "liabilities for workers' compensation
claims incurred in the previous year, including claims incurred but not reported, plus the amount
of expense incurred by the certified self-insurer in the previous year for administration of self-insurance." Tex. Lab. Code Ann. § 407.103(b) (West 1996).
4. The surcharge tax base for insurance companies is not defined by statute; instead, the
Department of Insurance defines the tax base by rule as "the correctly reported gross workers'
compensation premiums." See, e.g., 28 Tex. Admin. Code § 1.415 (1996).
5. Appellees paid a total of $4,817,963 in protest over the three year period: $1,393,158
on February 28, 1995, $1,430,298 on February 28, 1996, and $1,994,507 on February 26, 1997
and February 27, 1997.



 contains language similar to article 5.76-5,
section 10(b): "A workers' compensation insurance company is taxed at the rate established under
Section 403.003. The tax shall be collected in the manner provided for collection of other taxes
on gross premiums from a workers' compensation insurance company as provided in Article 5.68,
Insurance Code." Tex. Lab. Code Ann. § 403.002(c) (West 1996). Notwithstanding this
language, the legislature felt compelled to expressly state in article 5.68 that the amended
definition of "gross workers' compensation insurance premiums" applies to the general
maintenance tax. This indicates that language mandating that taxes be collected "in the manner"
or "in the same manner" as provided by article 5.68 is not as expansive as the State contends. 
Instead of linking a tax statute to all the provisions of article 5.68, the language appears to merely
adopt by reference the provisions of article 5.68 concerning the mechanics of tax collection, such
as when the taxes should be collected, where the collected taxes should be deposited, and the
agency to which the taxes should be allocated. See Tex. Ins. Code Ann. art. 5.68 (West Supp.
1999).

 Moreover, we must presume that when the legislature added the revised definition
of "gross workers' compensation insurance premiums" to article 5.68, it understood that all three
workers' compensation insurance taxes had been assessed on actual premiums written by insurance
companies. See Acker v. Texas Water Comm'n, 790 S.W.2d 299, 301 (Tex. 1990) ("A statute is
presumed to have been enacted by the legislature with complete knowledge of the existing law and
with reference to it."). Therefore, the legislature's decision to omit any mention of the surcharge
must be viewed as a deliberate act and given full effect. Accordingly, we hold that the surcharge
statute fails to incorporate article 5.68(b)'s definition of "gross workers' compensation insurance
premiums." We overrule appellants' sole point of error.


CONCLUSION

 The definition of "gross workers' compensation insurance premiums" in article
5.68(b) of the Insurance Code does not apply to the surcharge maintenance tax of article 5.76-5,
section 10(b). Because the State assessed and collected surcharge taxes from appellees based upon
other than actual premiums written, we affirm the judgment of the district court.



 

 Jan P. Patterson, Justice

Before Chief Justice Aboussie, Justices Kidd and Patterson

Affirmed

Filed: July 29, 1999

Publish
1. This appeal was originally filed in the names of the predecessors to the present
Commissioner, Attorney General, and Comptroller. We have substituted the current holders of
those offices as the proper parties to this proceeding. See Tex. R. App. P. 7.2(a).
2. Tex. Lab. Code Ann. §§ 401.001-506.001 (West 1996 & Supp. 1999).
3. The tax for certified self-insurers is based upon "liabilities for workers' compensation
claims incurred in the previous year, including claims incurred but not reported, plus the amount
of expense incurred by the certified self-insurer in the previous year for administration of self-insurance." Tex. Lab. Code Ann. § 407.103(b) (West 1996).
4. The surcharge tax base for insurance companies is not defined by statute; instead, the
Department of Insurance defines the tax base by rule as "the correctly reported gross workers'
compensation premium