# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

===============

## NO. 03-01-00542-CV

===============

**Philip C. Bobbitt, Appellant**

**v.**

**Robert E. Cantu, Appellee**

=======================================================================

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT NO. 98-00595, HONORABLE DARLENE BYRNE, JUDGE PRESIDING

=======================================================================

This case involves the legal construction of a driveway easement involving two neighbors, Philip C. Bobbitt ("Bobbitt") and Robert E. Cantu ("Cantu"). Declaring the written easement unambiguous, the district court rendered summary judgment for Cantu. We conclude that the easement is subject to more than one reasonable interpretation creating an imbedded fact issue regarding the intent of the grantor and grantee of the easement. We therefore reverse the district court's summary judgment and remand for further proceedings.

## BACKGROUND

Bobbitt owns a tract of land ("the Bobbitt Tract") that fronts Windsor Road on the west. Cantu is his neighbor to the north. Cantu's property ("the Callicutt Tract")[1] also fronts

---

[1] Cantu purchased his property from Mr. and Mrs. Callicutt in 1993.

Windsor Road on the west. The Callicutt Tract has a northern boundary lying close to Kingsbury Street. A small strip of city-owned land, a portion of Pease Park, separates the Callicutt Tract from Kingsbury Street. To the east of Cantu's property is a lot known as the Gamel Tract, which fronts Kingsbury Street on the north. Bobbitt also owns the Gamel Tract. Thus, Bobbitt owns the tracts directly next to Cantu's property on both its southern and eastern boundaries. The following graphic illustrates the approximate position and relationship of the properties concerned.



In 1983, Bobbitt purchased an easement from the prior owners of Cantu's property, Mr. and Mrs. Callicutt. The grant of easement states in relevant part:

> That I, J. M. CALLICUTT . . . have granted, bargained, sold, and conveyed . . . to PHILIP C. BOBBITT of Austin, Texas, his heirs and assigns, for the purpose of constructing, maintaining, and using a one-lane, graded and paved vehicular driveway to extend from Kingsbury Street on the North line of the servient

estate herein described to the said grantee's property on the South line of such servient estate, a private right of way over [the Callicutt Tract] for the benefit of and as an easement appurtenant to that land (or any portion thereof) owned by grantee . . . .

. . . .

It is understood that the exact location of the contemplated driveway on and over the servient estate shall be designated by grantee, and in making such designation the grantee will make a reasonable effort to preserve as many as possible of the trees now on such property with a trunk diameter of more than eight inches.

Cantu purchased the Callicutt Tract with knowledge of Bobbitt's easement.

Although Bobbitt purchased the easement in 1983, he did not choose a location or draft plans for the driveway until 1996. In his initial plan, the driveway would have run from Kingsbury Street across the strip of Pease Park, over the Callicutt Tract, and onto his land. In order to cross Pease Park, Bobbitt needed permission from the City of Austin; the city council denied his request for such permission in 1997. Therefore, Bobbitt revised his plan. Under Bobbitt's new plan, the driveway would access Kingsbury Street from the Gamel Tract and enter the Callicutt Tract from the east.[2] Bobbitt began construction according to this revised plan in 1997.

Cantu initially agreed to Bobbitt's plan, but later ordered Bobbitt's workers and equipment off his property and refused to allow further work on the driveway. Bobbitt filed suit, seeking a declaration that he has a valid easement and that the planned driveway conforms to the terms of the easement. He also sought to enjoin Cantu from interfering with the construction of the

---

[2] Apparently, due to the slope of the tracts, it is impracticable to bypass the Callicutt Tract by running the driveway entirely through Bobbitt's property.

driveway. Cantu counterclaimed, suing Bobbitt for trespass and seeking a declaration that the easement had terminated due to impossibility once the Austin City Council denied Bobbitt's request to build across Pease Park. Cantu also sought injunctive relief and actual and exemplary damages for his trespass claim. The meaning of the phrase "on the North line of the servient estate" is the central issue in this case. Cantu contends that the phrase is a limitation requiring the driveway easement to *cross* the northern boundary of the Callicutt Tract. Bobbitt, on the other hand, interprets the phrase to be merely descriptive of the location of Kingsbury Street and a part of the purpose clause of the written easement.

The parties filed competing motions for summary judgment. The trial court denied Bobbitt's motion and granted partial summary judgment in favor of Cantu. The court found as a matter of law that the easement is unambiguous and requires the driveway to cross the northern boundary of the Callicutt Tract. The court also held that the easement had terminated due to impossibility when the Austin City Council refused to allow Bobbitt to build across Pease Park. Cantu's claim for damages and both parties' claims for attorneys' fees were tried to a jury. The jury failed to find that Cantu was entitled to damages or that either party was entitled to attorneys' fees. Thus, the trial court rendered final judgment incorporating the partial summary judgment with the jury's findings. Bobbitt appeals, complaining of the grant of partial summary judgment.

## DISCUSSION

Because the propriety of a summary judgment is a question of law, we review the trial court's decision *de novo*. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994); *Texas Dep't*

4

*of Ins. v. American Home Assurance Co.*, 998 S.W.2d 344, 347 (Tex. App.—Austin 1999, no pet.). The standards for reviewing a motion for summary judgment are well established: (1) the movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). The function of summary judgment is not to deprive litigants of the right to trial by jury, but to eliminate patently unmeritorious claims and defenses. *Swilley v. Hughes*, 488 S.W.2d 64, 68 (Tex. 1972). The summary judgment is affirmable on appeal if any ground asserted in the motion for summary judgment is a valid ground for rendering summary judgment. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996).

In rendering summary judgment, the trial court adopted Cantu's interpretation of the grant of easement. Because Cantu interprets the phrase "on the North line of the servient estate" as requiring the driveway to cross the *northern* boundary of the Callicutt Tract, Cantu argues that Bobbitt's revised plan violates the terms of the easement because the driveway crosses the *eastern* boundary of the Callicutt Tract. Cantu further claims that because reaching the northern boundary of the Callicutt Tract from Kingsbury Street requires crossing city-owned land, the City of Austin's refusal to grant permission to do so caused the easement to terminate due to impossibility.

Bobbitt argues for an alternative interpretation of the grant. He asserts that it contains separate and distinct clauses describing the purpose and location of the easement. According to this interpretation, the purpose of the easement is to allow Bobbitt to build and use a driveway from

5

Kingsbury Street to the Bobbitt Tract. The clause describing this purpose includes the phrase "on the North line of the servient estate." Bobbitt contends that this phrase serves to further identify Kingsbury Street, not to restrict the easement's location. Bobbitt argues that a subsequent clause controls location and it gives the right to designate the location of the driveway to Bobbitt, subject only to a single limited restriction, that he make a reasonable effort to save the larger trees on the lot.

Easement agreements are subject to the same rules of construction and interpretation as contracts. *Dewitt County Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999). The primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument. *See National Union Fire Ins. Co. v. CBI Indus.*, 907 S.W.2d 517, 520 (Tex. 1995). For a court to be able to construe a contract as a matter of law, the contract must be unambiguous. *See Columbia Gas Transmission Corp. v. New Ulm Gas*, 940 S.W.2d 587, 589 (Tex. 1996). If a written contract is so worded that it can be given a definite or certain legal meaning, then it is unambiguous. *See National Union*, 907 S.W.2d at 520; *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983). On the other hand, if the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous, which creates a fact issue on the parties' intent. *See Columbia Gas*, 940 S.W.2d at 589. The trier of fact must resolve any ambiguities by determining the true intent of the parties, and may consider the parties' interpretations and extraneous evidence to do so. *See National Union*, 907 S.W.2d at 520.

The trial court's rendering of summary judgment was proper only if the terms of the easement are unambiguous as a matter of law. The grant expressly states that the purpose of the easement is to allow Bobbitt to build, maintain, and use a driveway extending from Kingsbury Street

6

to the Bobbitt Tract.  The disputed phrase, "on the North line of the servient estate," appears in the same sentence as this statement of purpose, and directly follows the reference to Kingsbury Street.  Therefore, Bobbitt's assertion that the parties intended that phrase to further identify Kingsbury Street, not to restrict the easement's location, is a reasonable interpretation of the language of the grant.  Accordingly, we cannot say, as a matter of law, that Cantu's interpretation of this phrase is the *only* reasonable one.  We conclude that the disputed phrase is reasonably subject to more than one interpretation.

Even assuming, as Cantu argues, that the disputed phrase is meant to describe and limit the location of the easement, there are a number of possible interpretations of its meaning, and we cannot say as a matter of law that the driveway must *cross* the northern boundary of the Callicutt Tract.  "On the North line of the servient estate" could mean that the driveway must *cross* the northern boundary of the tract, but it could also mean that the easement must *begin* on the northern boundary, or it could mean that the driveway must *touch* the northern boundary but is not required to *cross* it.  Any of these interpretations of the grant language are reasonable, and in fact, Bobbitt's revised plan for the driveway would seem to conform to the last interpretation if the driveway entered the Callicutt Tract touching its northeast corner.  Because the easement is subject to more than one reasonable interpretation, it is ambiguous.  Therefore, the trial court erred in granting summary judgment because there is a fact issue as to the intent of the parties to the grant.  *Coker*, 650 S.W.2d at 394.

The trial court's grant of summary judgment for Cantu is reversed, and this cause is remanded to the court below for a trier of fact to determine the true intent of the parties to the easement.

_____

Mack Kidd, Justice

Before Justices Kidd, B. A. Smith and Powers[*]

Reversed and Remanded

Filed: March 28, 2002

Do Not Publish

\* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).