# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

===============================

## ON MOTION FOR REHEARING

===============================

## NO. 03-04-00660-CV

**Home Interiors & Gifts, Inc., Appellant**

**v.**

**Carole Keeton Strayhorn, Comptroller of Public Accounts of the State of Texas, and Greg Abbott, Attorney General of the State of Texas, Appellees**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT NO. GN303185, HONORABLE DARLENE BYRNE, JUDGE PRESIDING**

## O P I N I O N

On August 9, 2005, appellant, Home Interiors & Gifts, Inc., filed an unopposed motion for rehearing seeking a modification of our opinion and judgment issued on July 28, 2005. Additionally, on August 15, 2005, the appellees, the Comptroller and the Attorney General, filed a motion for rehearing. We grant the appellant's unopposed motion and overrule the appellees' motion. Accordingly, our opinion and judgment issued on July 28, 2005, are withdrawn, and the following opinion is substituted.

In this case, we determine whether the earned surplus throwback provision of the Texas franchise tax as applied to appellant, Home Interiors & Gifts, Inc. (Home Interiors), unconstitutionally burdens interstate commerce. Home Interiors is seeking a refund of franchise taxes timely paid to appellee, Carole Keeton Strayhorn (the Comptroller). Both parties filed motions for summary judgment. The district court denied Home Interiors' motion and granted the Comptroller's motion. On appeal, Home Interiors argues that the application of the earned surplus throwback provision causes the franchise tax to (1) be unfairly apportioned, (2) discriminate against interstate commerce, and (3) be unfairly related to services provided by Texas. Because we hold that the franchise tax as applied to Home Interiors lacks internal consistency and, consequently, is unfairly apportioned, we reverse the district court's grant of summary judgment in favor of the Comptroller and render judgment that the tax is unconstitutional as applied to Home Interiors.

## BACKGROUND

### *Home Interiors*

Home Interiors is a Texas corporation that employs approximately 350 employees in Texas. Virtually all its operations occur in Texas—it has no manufacturing, warehousing, or administrative facilities outside of this state. It is in the business of purchasing home decor products, accessories, and gifts and wholesaling them to independent contractors, known as "Displayers." Additionally, Home Interiors sells a variety of marketing materials to the Displayers to aid in the retail sale of the products. All of Home Interiors' profits are generated from the initial sale of the products to the Displayers. During the period of time relevant to this appeal, Home Interiors sold products to Displayers located in all fifty states, Washington D.C., and Puerto Rico.

The Displayers generate sales by hosting promotional parties where they provide samples and demonstrate various products. They also distribute catalogs and recruit new salesmen. Essentially, the Displayers function as a retail outlet for Home Interiors' wares. However, the Displayers are not employed by Home Interiors. Home Interiors does not compensate the Displayers and does not provide them benefits of any kind. It does, however, pay the Displayers a commission on sales generated by a newly recruited salesperson. Additionally, Home Interiors has no contact with any of the Displayers' retail customers and does not install or repair products outside of Texas.

Between 1994 and 1999, Home Interiors timely paid its Texas franchise taxes. It now seeks a refund of those taxes, contending that the statutory method for apportioning the earned surplus component of the franchise tax is unconstitutional. After refund hearings were held, the Comptroller issued a decision in July 2003 stating that she did not have the authority to rule on the constitutionality of the statutory provisions. Consequently, Home Interiors brought suit in district court, which upheld the constitutionality of the earned surplus throwback provision.

### Texas Franchise Tax

The franchise tax is imposed on corporations in Texas for the privilege of doing business here. *See* Tex. Tax Code Ann. § 171.001(a)(1) (West Supp. 2004-05); *Anderson-Clayton Bros. Funeral Home, Inc. v. Strayhorn*, 149 S.W.3d 166, 169 (Tex. App.—Austin 2004, pet. filed); *Rylander v. Fisher Controls Int'l, Inc.*, 45 S.W.3d 291, 293 (Tex. App.—Austin 2001, no pet.). Before January 1, 1992, the franchise tax was assessed solely on a corporation's taxable capital. *Anderson-Clayton Bros.*, 149 S.W.3d at 169. The result was that capital-intensive industries bore

3

the brunt of the tax. *Id*. In an effort to broaden the franchise tax base, the legislature added an alternative assessment on a corporation's "net taxable earned surplus." *Id*. Presently, the tax is calculated by adding the tax on net taxable capital to the difference between the tax on net taxable earned surplus and the tax on net taxable capital. *See* Tex. Tax Code Ann. § 171.002(b) (West 2002); *INOVA Diagnostics, Inc. v. Strayhorn*, 166 S.W.3d 394, 398 (Tex. App.—Austin, pet. filed). Despite this awkward formula, the practical effect is to assess the greater of a 4.5 percent tax on net taxable earned surplus or a .25 percent tax on net taxable capital. *See INOVA*, 166 S.W.3d at 398.

A corporation's net taxable capital consists of its stated capital and its surplus. *Fisher Controls Int'l*, 45 S.W.3d at 293. Its net taxable earned surplus is comprised of its reportable taxable income (for federal income-tax purposes) plus certain other sums and less other amounts. *Id*. at 294. A corporation's net taxable capital or net taxable earned surplus is apportioned to the state by dividing the corporation's gross receipts generated in Texas by the corporation's total world-wide gross receipts.[1] *See* Tex. Tax Code Ann. § 171.106 (West Supp. 2004-05); *General Dynamics Corp. v. Sharp*, 919 S.W.2d 861, 863 (Tex. App.—Austin 1996, writ denied). In addition, a corporation's gross receipts from each sale of tangible personal property shipped from Texas to a purchaser in another state are "thrown back" to Texas and added to the gross receipts from business done in Texas. Tex. Tax Code Ann. §§ 171.103(1) (West 2002), .1032(a)(1) (West Supp. 2004-05). Gross

---

[1] In apportioning net taxable capital and net taxable earned surplus, the gross receipts of a corporation from its business done in Texas include the receipts from a number of specifically enumerated categories of business activities and services performed here. *See* Tex. Tax Code §§ 171.103 (West 2002), .1032 (West Supp. 2004-05).

4

receipts used to apportion net taxable capital are only thrown back if the corporation is not subject to taxation in the purchaser's state. *Id*. § 171.103(1) (taxable capital throwback provision). Importantly, gross receipts used to apportion net taxable earned surplus are thrown back if the corporation "is not subject to any tax on, or measured by, net income, without regard to whether the tax is imposed." *Id*. § 171.1032(a)(1) (earned surplus throwback provision).

The purpose of the earned surplus throwback provision is to capture and tax income generated from sales in other states that would otherwise go untaxed as a result of Public Law 86-272. *See id*.; *cf INOVA*, 166 S.W.3d at 397 (explaining purpose of Public Law 86-272). Congress enacted Public Law 86-272 in 1959 in response to a United States Supreme Court decision that indicated that the federal constitution does not prohibit individual states from imposing an income tax on out-of-state corporations, even when their only business activity in the state is solicitation of purchases. 15 U.S.C. § 381(a) (West 1997); *see Wisconsin Dep't of Revenue v. William Wrigley, Jr. Co.*, 505 U.S. 214, 220-21 (1992) (discussing opinion in *Northwestern States Portland Cement Co. v. Minnesota*, 358 U.S. 450, 452 (1959)). Less than a year after the *Northwestern States Portland Cement* opinion, Public Law 86-272 was passed to create minimum standards for business activity required within a state before that state may impose state income tax on an out-of-state corporation. *See William Wrigley, Jr. Co.*, 505 U.S. at 223. Specifically, the statute prohibits a state from imposing a net income tax if the foreign taxpayer's only business activity in the state is the solicitation of orders. *See* 15 U.S.C. § 381(a). A net income tax is "any tax imposed on, or measured by, net income." *Id*. § 383.

All parties in this case concede that Public Law 86-272 protects Home Interiors from being taxed on income generated from sales of its products to Displayers located in most states.[2] Consequently, the gross receipts from sales to Displayers in those states were thrown back to Texas and added to Home Interiors' receipts from business done in Texas. Home Interiors claims that the inclusion of the thrown back receipts is significant because, during the time period at issue here, approximately ninety percent of its revenues were generated from sales outside of Texas. Accordingly, Home Interiors contends that the application of the earned surplus throwback provision results in an unfairly apportioned franchise tax assessment.

**STANDARD OF REVIEW**

We review the trial court's summary judgment *de novo*. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); *Texas Dep't of Ins. v. American Home Assurance Co.*, 998 S.W.2d 344, 347 (Tex. App.—Austin 1999, no pet.). When parties file cross-motions for summary judgment, each party in support of its motion necessarily takes the position that there is no genuine issue of fact in the case and that it is entitled to judgment as a matter of law. *City of Pflugerville v. Capital Metro. Transp. Auth.*, 123 S.W.3d 106, 110 (Tex. App.—Austin 2003, pet. denied). Thus, when both parties file a motion for summary judgment, we determine all questions presented and render such judgment as the trial court should have rendered. *See Commissioners Court v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997).

---

[2] We note that Home Interiors' activities exceeded those protected by Public Law 86-272 in fourteen states during certain time periods relevant to this appeal. The Comptroller agreed that gross receipts from sales to those states during the applicable periods were not subject to the throwback provision, and those receipts were excluded from the apportionment calculation.

6

In order to determine the judgment that the trial court should have rendered, we must construe the Texas franchise tax statute. In construing a statute, "our objective is to determine and give effect to the Legislature's intent." *National Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000); *see Albertson's, Inc. v. Sinclair*, 984 S.W.2d 958, 960 (Tex. 1999). Statutory construction is a question of law for the court to decide. *See Texas Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002).

## DISCUSSION

Home Interiors argues that the application of the earned surplus throwback provision causes the franchise tax to unconstitutionally burden interstate commerce because it results in an assessment that (1) is unfairly apportioned, (2) discriminates against interstate commerce, and (3) unfairly relates to services provided by Texas. Before directly considering Home Interiors' claim, a brief review of Commerce Clause jurisprudence is beneficial.

### *Commerce Clause*

The Commerce Clause of the Constitution expressly grants Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const., art. I, § 8, cl. 3. In addition to this express grant of authority, the Supreme Court has held that the Commerce Clause also prohibits certain state regulation of interstate commercial activity even when Congress has failed to legislate on the subject. *Oklahoma Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175, 179-80 (1995); *Quill Corp. v. North Dakota*, 504 U.S. 298, 309

7

(1992). This implicit principle is known as the "Dormant" or "Negative" Commerce Clause. While in theory the concept of the Dormant Commerce Clause is relatively simple to understand, its application to the practical realities of interstate commerce has proved quite difficult.

Initially, the Supreme Court held that interstate commerce was wholly immune from state taxation. *Jefferson Lines*, 514 U.S. at 180. Although there were minor deviations, the Court maintained this formalistic and mechanical approach to state taxation of interstate commerce until the late 1930s. In 1938, the Court moved away from its traditional "free trade" approach to the Commerce Clause. In *Western Livestock v. Bureau of Revenue*, 303 U.S. 250, 252 (1938), the Court was asked to determine whether a New Mexico tax on the privilege of engaging in specified business activities violated the Commerce Clause. The taxpayer was an instate magazine publisher and the tax involved was measured by gross receipts from the sale of advertising in the magazine. *Western Livestock*, 303 U.S. at 252. The magazine publisher argued that the revenue generated from the sale of ad space to out-of-state advertisers was immune from taxation because the contracts were a form of interstate commerce. *Id*. at 253. The Court sustained the tax and stated, "It was not the purpose of the Commerce Clause to relieve those engaged in interstate commerce from their just share of state tax burden even though it increases the cost of doing business." *Id*. at 254. The Court explained that the tax did not present the risk of double taxation:

> So far as the value contributed to appellants' New Mexico business by circulation of the magazine interstate is taxed, it cannot again be taxed elsewhere any more than the value of railroad property taxed locally. The tax is not one which in form or substance can be repeated by other states in such manner as to lay an added burden on the interstate distribution of the magazine.

8

*Id*. at 260. Shortly after *Western Livestock*, the Court further developed this rationale by invalidating an unapportioned gross receipts tax on the ground that interstate commerce would be subjected to the risk of a double tax burden not similarly imposed on intrastate commerce:

> The vice of the statute as applied to receipts from interstate sales is that the tax includes in its measure, without apportionment, receipts derived from activities in interstate commerce; and that the exaction is of such a character that if lawful it may in substance be laid to the fullest extent by States in which the goods are sold as well as those in which they are manufactured.

*J.D. Adams Mfg. Co. v. Storen*, 304 U.S. 307, 311 (1938).

The multiple taxation doctrine set forth in *Western Livestock* was not fully embraced by the Court and was temporarily repudiated in 1946. *See Freeman v. Hewit*, 329 U.S. 249 (1946); *see also* J. Hellerstein & W. Hellerstein, State Taxation ¶ 4.09 (3d ed. 2004) (hereinafter Hellerstein & Hellerstein). In *Spector Motor Serv., Inc. v. O'Connor*, 340 U.S. 602, 607-10 (1951), the Court held that a state is precluded from taxing the privilege of doing an exclusively interstate business, even by means of a nondiscriminatory, fairly apportioned net income tax. *See* Hellerstein & Hellerstein, ¶ 4.09.

In *Northwestern States Portland Cement Co. v. Minnesota*, the Court attempted to clear up "the tangled underbrush of past cases" by outlining the aspects of its Commerce Clause jurisprudence that remained in full force. *See* 358 U.S. 450, 457-58 (1959). After distinguishing *Spector* on the ground that it only involved a tax on the privilege of doing business, although measured by net income, the Court held that there is no constitutional barrier to the imposition of a nondiscriminatory, fairly apportioned direct net income tax on a foreign corporation carrying on

an exclusively interstate business within the taxing state. *Id*. at 458-60; *see also* Hellerstein & Hellerstein, ¶ 4.10. After *Northwestern States* many states replaced franchise taxes levied solely on the privilege of doing business in the state with direct net income taxes. *See* Hellerstein & Hellerstein, ¶ 4.10.

In 1977, the Court overruled *Spector*. *See Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 288 (1977). The Court stated that "the *Spector* rule does not address the problems with which the Commerce Clause is concerned. Accordingly, we now reject the rule of *Spector Motor Service, Inc. v. O'Connor*, that a state tax on the 'privilege of doing business' is per se unconstitutional when it is applied to interstate commerce." *Complete Auto*, 430 U.S. at 288-89. In reaching this conclusion, the Court noted that many of its post-*Western Livestock* opinions considered the practical effect of a state tax rather than the formal language of the tax statute. *Id*. at 279. Furthermore, the Court articulated what has come to be known as the *Complete Auto* doctrine. *Id*. Essentially, the Court declared that a tax will survive Commerce Clause scrutiny "when the tax is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State." *Id*. The four-pronged *Complete Auto* test continues to guide Commerce Clause analysis today. *See, e.g., American Trucking Ass'ns, Inc. v. Michigan Pub. Serv. Comm'n*, 2005 U.S. LEXIS 4843, at *17 (June 20, 2005).

Home Interiors now avers that, as applied to it, the application of the earned surplus throwback provision causes the franchise tax to fail the *Complete Auto* test.

***Substantial Nexus***

The first prong of the *Complete Auto* test asks whether Home Interiors' activities have a substantial nexus with the state justifying the application of the franchise tax. Both parties agree that Home Interiors' activities within the state are sufficient to constitute a substantial nexus.

***Fair Apportionment***

The more difficult question is whether the application of the earned surplus throwback provision to Home Interiors results in an unfair apportionment of franchise-tax liability under the second prong of the *Complete Auto* test. The fair apportionment requirement attempts to ensure that no State taxes more than its fair share of an interstate transaction. *Jefferson Lines*, 514 U.S. at 184; *Goldberg v. Sweet*, 488 U.S. 252, 260-61 (1989). "This principle of fair share is the lineal descendant of *Western Live Stock*'s prohibition of multiple taxation, which is threatened whenever one State's act of overreaching combines with the possibility that another State will claim its fair share of the value taxed." *Jefferson Lines*, 514 U.S. at 184. In order to determine whether a tax is fairly apportioned, we first ask whether it is "internally consistent," and if so, whether it is also "externally consistent." *Id*. at 185; *Goldberg*, 488 U.S. at 261.

The internal consistency test requires us to imagine a hypothetical scenario assuming that every state imposes a tax identical to the one at issue. *Jefferson Lines*, 514 U.S. at 185. In this hypothetical, if interstate commerce bears a burden that is not also borne by intrastate commerce, then the tax is not internally consistent. *Id*. "The test asks nothing about the degree of economic reality reflected by the tax." *Id*. The test is merely a tool used to determine whether, as a matter of law, a State is attempting to tax more than its fair share of interstate transactions. *Id*.

11

Although the Supreme Court and various state courts have applied the internal consistency test on a number of occasions, the two most significant and analogous examples are *Armco, Inc. v. Hardesty*, 467 U.S. 638 (1984), and *Tyler Pipe Industries, Inc. v. Washington Dep't of Revenue*, 483 U.S. 232 (1987). In *Armco*, the Court determined that West Virginia's business and occupation tax (B&O tax) was internally inconsistent. *Armco*, 467 U.S. at 642-46. The B&O tax had two components, a tax on wholesaling and a tax on manufacturing. *Id*. at 640-41. In general, a taxpayer engaged in both wholesaling and manufacturing would be liable for taxes on both activities. *Id*. However, there was a "multiple activities" exemption that relieved instate manufacturers who also wholesaled their products in the state from liability for the wholesale tax. *Id*.; *see* Hellerstein & Hellerstein, ¶ 4.15. The result was that an instate manufacturer/wholesaler only paid the manufacturing tax, but an out-of-state manufacturer who made wholesale sales in West Virginia paid the wholesale tax, even if it paid a manufacturing tax in another state.

An Ohio corporation challenged West Virgina's B&O tax scheme, claiming that it was facially discriminatory and that it unconstitutionally discriminated against interstate commerce. *Armco*, 467 U.S. at 639-40. The Court agreed, concluding that the multiple activities exemption caused the B&O tax to be internally inconsistent. *Id*. at 642-46. The Court explained that, if every state adopted an identical B&O tax scheme, corporations that manufactured products in one state and made wholesale sales in another state would be subject to manufacturing taxes in the state of production and wholesale taxes in the state of sale. *Id*. However, a corporation that both manufactured and made wholesale sales in the same state would never be subject to the wholesale tax. *Id*. Significantly, in response to the argument that an instate manufacturer/wholesaler paid more

12

taxes than an out-of-state manufacturer as a result of the higher tax rate on manufacturing, the Court held that a showing of actual discriminatory impact was unnecessary. *Id*. at 644-45.

In *Tyler Pipe*, the Court addressed Washington state's B&O tax scheme, which was nearly identical to the one struck down in *Armco*. *Tyler Pipe*, 483 U.S. at 234. The only difference was that the Washington tax exempted instate manufacturer/wholesalers from the manufacturing tax as opposed to the wholesale tax. *Id*. at 236-37. As a result, Washington's tax was not facially discriminatory because both instate manufacturer/wholesalers, who benefitted from the exemption, and out-of-state manufacturers, who made wholesale sales in Washington, were liable for the wholesale tax. *Id*. at 239. Nevertheless, the Court concluded that the reasons for invalidating the West Virginia tax equally applied to the Washington tax. *Id*. at 234. Like *Armco*, if every state hypothetically imposed Washington's B&O tax scheme, then corporations that manufactured in one state and sold wholesale in another would ultimately be liable for both the manufacturing and the wholesale tax, while the instate manufacturer/wholesaler would never be liable for the manufacturing tax. Again, the Court held that the Washington tax scheme was not internally consistent. *Id*. at 248.

There are a number of lessons we can learn from *Armco* and *Tyler Pipe* regarding internal consistency. First, a tax may be internally inconsistent even if a corporation doing intrastate business pays more than a corporation doing interstate business. *See id*. at 240-41; *see also Armco*, 467 U.S. at 642-46. This was the case in *Armco* where the intrastate corporation actually paid more tax, but the B&O tax scheme was still held to be internally inconsistent because the interstate corporation was subject to a separate tax under the scheme that the intrastate corporation was not. Second, the internal consistency test does not require a showing of either actual discrimination or

13

actual multiple taxation; the test is purely hypothetical. *See Tyler Pipe*, 483 U.S. at 242-47. Finally, a tax that is internally inconsistent, and therefore unfairly apportioned, discriminates against interstate commerce. *Id*. at 247.

Home Interiors argues that the interplay between Public Law 86-272 and the Texas earned surplus throwback provision causes the franchise tax to be internally inconsistent as applied to it. To determine if Home Interiors' argument is valid, our first step is to imagine a situation in which every state imposes an integrated franchise tax, identical to the Texas tax, in which a corporation's liability is the greater of a 4.5 percent tax on net taxable earned surplus or a .25 percent tax on net taxable capital. Our second step is to imagine two corporations like Home Interiors. The first corporation (intrastate corporation) resides in Texas and sells its products completely instate. The second corporation (interstate corporation) also resides in Texas but sells its products to instate and out-of-state buyers and is protected by Public Law 86-272 from being taxed on its net income from out-of-state sales. Our final step is to determine whether the interstate corporation bears a tax burden that is not also borne by the intrastate corporation.

Under this hypothetical tax scheme, the intrastate corporation will only pay franchise tax to Texas. Its franchise tax liability will be the greater of a 4.5 percent tax on net taxable earned surplus or a .25 percent tax on net taxable capital. It will never pay a tax on both its taxable capital and its net taxable earned surplus. *See* Tex. Tax Code Ann. § 171.002(b). Essentially, the intrastate corporation's franchise tax liability will be assessed on 100 percent of either its taxable capital or its net taxable earned surplus.

14

The interstate corporation is potentially liable for franchise tax in each state in which it has a substantial nexus, basically each state in which it sold its products. As discussed earlier, the Texas franchise tax is apportioned based on the gross receipts from sales and other specifically enumerated business activities attributable to an individual state. However, because the interstate corporation is protected from being taxed on its net income generated from out-of-state sales by Public Law 86-272, the earned surplus throwback provision mandates that the gross receipts from these sales be thrown back to Texas for use in apportioning Texas' share of the interstate corporation's cumulative franchise tax burden. Thus, the interstate corporation's franchise tax liability to Texas will be the greater of a 4.5 percent tax on net taxable earned surplus or a .25 percent tax on net taxable capital. Both parties agree that in Texas the greater of the two franchise tax components will be the tax on net taxable earned surplus because of the higher tax rate and the inclusion of the gross receipts resulting from the application of the earned surplus throwback provision.

Even though Public Law 86-272 protects the interstate corporation from a tax based on net income in states other than Texas, the interstate corporation would still be liable for franchise taxes on its net taxable capital in those states that hypothetically apply the integrated Texas franchise tax. *See INOVA*, 166 S.W.3d at 401 (where Public Law 86-272 prohibits taxation of earned surplus, comptroller may impose tax based on capital). Under this hypothetical scenario, the interstate corporation would be subject to a franchise tax based on its net taxable earned surplus in Texas and franchise taxes based on its net taxable capital in all other states. Therefore, because an interstate corporation could be subject to a tax that an intrastate corporation would never bear, the Texas

15

franchise tax as applied to Home Interiors is not internally consistent. *See Tyler Pipe*, 483 U.S. at 248; *Armco*, 467 U.S. at 644.

The Comptroller contends that the Texas franchise tax is internally consistent because, even if every state imposed an identical tax, no more than 100 percent of an interstate corporation's taxable capital base or net taxable earned surplus base would be subject to tax. The Comptroller's theory is predicated on the notion that the internal consistency test should be applied to one tax base at a time, net taxable capital or net taxable earned surplus. In support of this theory, the Comptroller cites to *Container Corp. v. Franchise Tax Board*, 463 U.S. 159, 163 (1983); *Armco*, 467 U.S. at 640; *Tyler Pipe*, 483 U.S. at 253; *American Trucking Ass'ns, Inc. v. Scheiner*, 483 U.S. 266 (1987); *Goldberg*, 488 U.S. at 256; and *Jefferson Lines*, 514 U.S. at 177, to establish that the Supreme Court has invariably applied the test to one taxable base. The Comptroller's reading of *Container Corp.*, *American Trucking*, *Goldberg*, and *Jefferson Lines* is correct because in those instances the Court was applying the internal consistency test to a singular tax. However, in both *Armco* and *Tyler Pipe*, the Court applied the test to tax schemes that consisted of two distinct tax bases. *See Tyler Pipe*, 483 U.S. at 234-36; *Armco*, 467 U.S. at 640-42. In both cases, the Court concluded that the tax scheme was not fairly apportioned because, applying the internal consistency test, an interstate corporation was subject to a tax that would never be assessed on an intrastate corporation. *See Tyler Pipe*, 483 U.S. at 248; *see also Armco*, 467 U.S. at 644-46. Similarly, if the hypothetical internal consistency test is applied to the integrated Texas franchise tax, an interstate corporation, that both resides in Texas and is protected by Public Law 86-272 from the imposition of a tax based on net income in other states, would be subject to both a tax on capital in the other

16

state and on earned surplus in Texas, while a similarly situated intrastate corporation would only be subject to the greater of the two taxes. Thus, we find no difference between the application of the internal consistency test in this case and the Supreme Court's application of the test in *Armco* and *Tyler Pipe*.

The Comptroller insists that the Texas franchise tax is not facially discriminatory and would pass the internal consistency test in the absence of Public Law 86-272. In her reply brief, the Comptroller explains, "The risk of taxing multi-state corporations on 100% of earned surplus and 100% of capital does not arise from 'impermissible discrimination against interstate commerce,' but from the relationship between Public Law 86-272 and the franchise tax." She also states, "Without Public Law 86-272, Texas franchise taxpayers would all be taxed on the greater of earned surplus or capital." She then cites *Shell Oil Co. v. Iowa Department of Revenue*, 488 U.S. 19, 30 (1988), for the proposition that "[a] federal law enacted under the Commerce Clause does not invalidate a neutral state statute under the negative Commerce Clause." She contends that while in operation there may be a risk of discrimination against an interstate company, it is only Public Law 86-272, not the Texas franchise tax, that produces this possibility. Therefore, in light of *Shell Oil*, the Comptroller insists that the neutral Texas franchise tax survives Commerce Clause scrutiny.

While we agree that the Texas franchise tax is facially neutral, we disagree with the Comptroller's reading of *Shell Oil*. Nowhere in the opinion do we find support for the general proposition proffered by the Comptroller. In fact, the Court's Commerce Clause analysis appears to dictate a case-by-case analysis when determining whether a federal law preempts a state law, even when the state law is facially neutral. *See Shell Oil*, 488 U.S. 24-28. More importantly, Public Law

17

86-272 provoked the earned surplus throwback provision; the throwback provision was designed to take advantage of the effect of Public Law 86-272—leaving a significant portion of net income from interstate commerce untaxed by any state—by having those receipts thrown back to Texas for inclusion in our franchise tax computations when the business has a significant nexus with this state. *See INOVA*, 166 S.W.3d at 398 n.3 (recognizing that Public Law 86-272 has been incorporated into Comptroller's rules). In the absence of Public Law 86-272, other states would be allowed to impose net income taxes on corporations that merely solicit sales in their state. Without Public Law 86-272 there would be no earned surplus throwback provision in Texas because there would be nothing to throw back. Thus, we conclude that it would be improper to analyze the franchise tax without considering the ramifications of Public Law 86-272.

In conclusion, we hold that the interplay between Public Law 86-272 and the earned surplus throwback provision causes the franchise tax, as applied to Home Interiors, to be internally inconsistent. Therefore, it fails *Complete Auto*'s fair apportionment requirement. Because we hold that the tax is unfairly apportioned as to Home Interiors, we need not address the final two prongs of the *Complete Auto* test.

Although we hold that the franchise tax as applied to Home Interiors lacks internal consistency, we acknowledge that the Supreme Court has envisioned a remedy. The Court has recognized that a credit system can be used to cure fair apportionment problems. In *Goldberg v. Sweet*, the Supreme Court held that the Illinois Tax Act did not pose a risk of multiple taxation because of a credit provision. *See* 488 U.S. 252, 263-64 (1989); *see also Tyler Pipe*, 483 U.S. at 245 n.13 (noting, "[m]any States provide tax credits that alleviate or eliminate the potential multiple taxation that results when two or more sovereigns have jurisdiction to tax parts of the same chain

18

of commercial events."). Similarly, the Texas legislature might explore granting an interstate company a franchise tax credit to offset any taxes assessed on the interstate company's capital by a state that threw back receipts to Texas.

We agree with Walter Hellerstein that "[t]he Court has embraced a doctrine of 'internal consistency' that may introduce confusion and uncertainty in an area of the law that has had more than its fair share of both." Walter Hellerstein, *Is Internal Consistency Foolish?: Reflections on an Emerging Commerce Clause Restraint on State Taxation*, 87 Mich. L. Rev. 138, 188 (1988). An unfairly apportioned state tax discriminates against interstate commerce, but is a hypothetical test that ignores the practical interplay of states' actual taxation schemes on interstate commerce a proper way to measure internal consistency? We join Justice Scalia in expressing our distrust of hypothetical assumptions to measure the proper reach of the Dormant Commerce Clause: "It seems to me that we should adhere to our long tradition of judging state taxes on their own terms, and that there is even less justification for striking them down on the basis of assumptions as to what other States *might* do than there is for striking them down on the basis of what other States *in fact* do." *Tyler Pipe*, 483 U.S. at 259 (Scalia, J., concurring) (emphasis in original). Home Interiors' interstate commerce is not actually burdened by the earned surplus throwback provision; the risk of multiple taxation is only hypothetical. Nevertheless, the Supreme Court has held that the mere risk of multiple taxation is sufficient to invalidate a state tax as unduly burdensome on interstate commerce. *See Jefferson Lines*, 514 U.S. at 185; *Tyler Pipe*, 483 U.S. at 247. We cannot ignore that the Texas earned surplus throwback provision creates such a hypothetical risk as applied to Home Interiors.

19

## CONCLUSION

We hold that the interplay between the earned surplus throwback provision and Public Law 86-272 causes the Texas franchise tax to fail the internal consistency test as applied to Home Interiors. Accordingly, Home Interiors' franchise tax assessment is unfairly apportioned. We reverse the district court's grant of summary judgment in favor of the Comptroller and render judgment that the Texas franchise tax, as applied to Home Interiors, unconstitutionally burdens interstate commerce. We further order the Comptroller to refund to Home Interiors the franchise taxes in controversy in the amount of $15,480,088 plus interest.

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton: Opinion by Justice B. A. Smith; Concurring Opinion by Justice Pemberton

Reversed and Rendered

Filed: September 22, 2005